2013 Ark. App. 394

**Amalie E. BISHOP (Singletary), Appellant**

v.

**Joseph E. SINGLETARY, Appellee.**

No. CV–12–751.

Court of Appeals of Arkansas.

June 19, 2013.

Law Office of Kathryn L. Hudson, Little Rock, by: Kathryn L. Hudson, for appellant.

Greg Crumpton, Cabot, for appellee.

ROBIN F. WYNNE, Judge.

Amalie ("Amy") Bishop appeals from an order of the Lonoke County Circuit Court granting sole custody of the parties' minor daughter to her ex-husband, appellee Joseph Singletary. She argues that the trial court erred by not analyzing the case as required by the holding in *Hollandsworth v. Knyzewski*, 353 Ark. 470, 109 S.W.3d 653 (2003). We reverse and remand the order of the circuit court.

The parties were married on February 14, 1998, and were divorced via a decree entered on April 21, 2010. The parties have one child, C.S., who was born in 2007. Regarding custody of C.S., the decree states that "[t]he parties shall have joint custody of the minor child with [Amy] having primary custody. Child support and visitation shall be in accordance with the settlement agreement attached hereto and incorporated herein as if set out word-for-word." The parties' stipulation and property-settlement agreement states that "the parties shall have joint legal custody of the parties' minor child ... with [Amy] being the primary physical custodian." The agreement further states that, unless agreed upon otherwise, the parties were to alternate custody of the minor child on a weekly basis. The agreement contains no provision for child support.

Amy filed a motion for change of child custody and support on April 19, 2011. In the motion, she alleged that a material change in circumstances had occurred since the decree was entered because her current spouse was being transferred to Fort Worth, Texas, in May 2011. She requested that she be granted sole custody of the child, subject to liberal visitation by Joseph. Joseph responded and counterclaimed, seeking sole custody of the child. He also filed a motion for a finding of contempt in which he alleged that Amy had relocated to Texas without the circuit court's permission and that she had violated the exchange-of-custody terms set out in the decree.

The parties attended mediation prior to the hearing and reached an agreement that the visitation for the noncustodial parent would be reduced from two weeks per month to one week per month. The hearing on the motions before the circuit court was held on April 11, 2012. At the hearing, Amy and her husband, Gerald Bishop, testified that his new position in Texas had a higher salary, which would allow her to be a stay-at-home mother to C.S. and C.S.'s half-siblings, which they believed would be best for the family. Both Amy and Joseph testified that there were no disagreements with the custody arrangement prior to Amy's relocation. Joseph testified that he understood what a custodial parent was at the time he signed the settlement agreement. Amy argued at the hearing that she should receive the presumption in favor of relocation by a custodial parent set out in *Hollandsworth*, 353 Ark. 470, 109 S.W.3d 653. Joseph argued that *Hollandsworth* did not apply because the parties had a true joint-custody arrangement. The attorney ad litem for C.S. agreed with Joseph and recommended that he be given custody of C.S.

On May 8, 2012, the circuit court entered an order in which it found that the parties had joint custody of C.S., also found that Amy's relocation constituted a material change in circumstances, and awarded sole custody of the child to Joseph. The circuit court did not apply *Hollandsworth* in making its decision. This appeal followed.

We review equity cases de novo, but we will reverse only if the trial court's findings were clearly erroneous or clearly against the preponderance of the evidence. *Ford v. Ford,* 347 Ark. 485, 65 S.W.3d 432 (2002). A finding is clearly erroneous when the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been committed. *Id.* We give due deference to the trial judge's superior position to determine the credibility of the witnesses and the weight to be given their testimony. *Id.* Since the question of the preponderance of the evidence turns largely upon the credibility of the witnesses, we defer to the superior position of the trial judge to evaluate the witnesses, their testimony, and the child's best interest. *Word v. Remick,* 75 Ark. App. 390, 58 S.W.3d 422 (2001). Because there are no cases in which the superior position, ability, and opportunity of the trial judge to observe the parties carry as much weight as in those involving child custody, our deference to the trial judge is correspondingly greater in such cases. *Id.* The best interest of the child is of paramount importance in deciding the question of custody; all other considerations are secondary. *Ford, supra.*

Amy argues that the trial court erred by failing to apply *Hollandsworth.* In *Hollandsworth,* our supreme court held that relocation by a custodial parent does not, by itself, constitute a material change in circumstances. 353 Ark. at 476, 109 S.W.3d at 657. The *Hollandsworth* court also announced a rebuttable presumption in favor of relocation by a custodial parent with primary custody. *Id.*

We hold that the trial court erred by finding that the relocation by Amy constituted a material change in circumstances and by failing to apply the presumption that relocation by Amy is in C.S.'s best interest. The decree itself states that the parties would have joint custody, that Amy would have primary custody, and that child support and visitation would be in accordance with the parties' settlement agreement. The parties' settlement agreement, which was incorporated into the divorce decree, explicitly states that, while the parties would have joint *legal* custody of C.S., Amy would be the child's primary *physical* custodian. Absent a subsequent modification, the language in the decree is controlling. *Hurtt v. Hurtt,* 93 Ark.App. 37, 47–48, 216 S.W.3d 604, 610 (2005). Thus, although the settlement agreement goes on to state that the parties would alternate weeks with the child, the decree does not award joint physical custody of C.S. Joseph was aware of this, as he testified at the hearing that he knew when he signed the agreement that Amy was to be the primary physical custodian of C.S., and that he also knew that this meant Amy would make the final decisions regarding the child.

Our holding in this case is supported by our case law. We affirmed the trial court's application of *Hollandsworth* in *Chastain v. Chastain,* 2012 Ark. App. 73, 388 S.W.3d 495, where the decree of divorce stated that custody of the children would be joint and equal with the mother having the primary residence. We reversed and remanded for application of *Hollandsworth* in *Hurtt, supra,* where the decree stated that the parties would have joint custody of the minor child with the wife having primary custody and the parties testified that they split time with the child equally. Likewise, in *Durham v. Durham,* 82 Ark.App. 562, 120 S.W.3d 129 (2003), a case that was decided shortly after *Hollandsworth* was announced, we applied the *Hollandsworth* presumption to a joint-custody situation in which one parent had primary custody.

Joseph argues in his reply brief that, although the circuit court did not employ *Hollandsworth,* the order should still be affirmed because the circuit court found a material change in circumstances in addition to the relocation. For support, he cites our decision in *Shannon v. McJunkins,* 2010 Ark. App. 440, 376 S.W.3d 489. *Shannon* is inapplicable to the instant case. In that case, we held that, although it was error for the trial court to not apply *Hollandsworth,* the resulting order could be affirmed because, in addition to the mother's request for relocation out of state, the mother had impermissibly cohabitated with members of the opposite sex, the mother's older daughter exhibited serious discipline problems, and the father of the mother's older child harassed the mother. Here, both parties agreed that there were no problems prior to Amy's relocation and the testimony reveals that all the problems that appeared after the relocation were a result of the relocation itself. Therefore, there was no basis to find a material change in circumstances independent of the move, and there is no indication from the circuit court's order that it did so.

The circuit court's order is reversed and remanded for the circuit court to review the case pursuant to the requirements set forth by our supreme court in *Hollandsworth.*

Reversed and remanded.

WALMSLEY, GLOVER, and HIXSON, JJ., agree.

BROWN, J., concurs.

GLADWIN, C.J., and HARRISON, Gruber, and WOOD, JJ., dissent.

ROBERT J. GLADWIN, Chief Judge, dissenting.

The primary question in this case is whether the interpretation of "joint custo-dy of the minor child with [Amy] having primary custody" is a question of fact or a question of law. In this case, I believe the trial court properly viewed the issue as a question of fact. As I cannot say that was clearly erroneous, I would affirm.

The majority adequately sets out the facts of the case. The relevant part of the divorce decree states that "the parties shall have joint custody of the minor child with [Amy] having primary custody." The property settlement states that "the parties shall have joint legal custody of the parties minor child . . . . with [Amy] being the primary physical custodian." The majority holds that the trial court erred in finding that the relocation by Amy was a material change in circumstances and by failing to apply the presumption that relocation by Amy is in C.S.'s best interest. They acknowledge that the parties have joint legal custody, but Amy would be the primary physical custodian. The majority implies that the physical-custody language trumps the legal-custody language without explaining why that is so. By doing this, the majority makes the interpretation a question of law rather than a question of fact. Under the majority's analysis, "joint legal custody" is surplusage.

It is basic contract law that we are required to read contracts by giving words their ordinary meaning. *See Lee v. Bolan,* 2010 Ark. App. 209, 374 S.W.3d 718 (2010). Joint legal custody must have some meaning. The majority also relies on Joseph's testimony that he knew that Amy would make the final decisions regarding the child. That conclusion is not in the decree or settlement agreement. Further, if the interpretation of joint legal custody is a question of law, or has no meaning, then Joseph's opinion of who has control has no bearing on the outcome of the case. Ab-

sent the words "joint legal custody" the majority's analysis would be correct.

I also disagree with the dissent's analysis. The holding does not remove custody decision making from the circuit court. The dissent states that *Lewellyn v. Lewellyn*, 351 Ark. 346, 93 S.W.3d 681 (2002), is disregarded by the majority. Although the cases are similar factually, it was decided prior to *Hollandsworth* and must be reviewed in that light. Further, in *Lewellyn* there was no discussion about joint custody versus physical custody. *Hollandsworth* requires that analysis. In *Lewellyn*, the trial court addressed the custody under a change-in-circumstances analysis followed by a best-interest analysis. Our supreme court approved this approach. *Lewellyn* cannot be directly on point after *Hollandsworth* but can be followed in a custody analysis.

The dissent next cites *Chastain v. Chastain*, 2012 Ark.App. 73, 388 S.W.3d 495 (2012), for the proposition that whether the parties had joint custody is a question of fact. I do not think *Chastain* is that clear. In *Chastain* our court stated:

> Both parties agreed at the hearing that the primary issue to be decided by the trial court was whether the parties had true joint physical custody under the terms of the settlement agreement or whether the appellee had primary physical custody.

*Id.*, 2012 Ark. App. 73 at 5–6, 388 S.W.3d 495 at 499.

Our court discussed the factors relied on by the trial court in affirming the decision. This supports the proposition that the issue was a question of fact; however, we did not stop there. In discussing *Hollandsworth*, we said:

> The meaning of the language in the parties' settlement agreement stating that they would share "joint and equal" custody, but the appellee would be the

"primary residential parent" was an important issue to be determined by the court.

*Chastain*, 2012 Ark. App. 73 at 7, 388 S.W.3d 495 at 500.

Before we can reach the fact question in the instant case, under basic contract law, the court must construe the contract, as a matter of law. *Poff v. Peedin*, 2010 Ark. App. 365, at 3–, 374 S.W.3d, 879, 881. This case requires a basic interpretation of the clause, "the parties shall have joint custody of the minor child with [Amy] having primary custody." The court must construe that clause. *See Lee v. Bolan, supra.* The terms "joint custody" joined with "primary physical custody" logically cannot be reconciled, so the clause is ambiguous. Therefore the court can look to the intent of the parties to construe the contract. In this case, the interpretation of the decree creates a question of fact. The trial court considered all the evidence and found that the parties shared equally the custody of the child. I cannot say that this finding was clearly erroneous. Based upon this finding the *Hollandsworth* presumption would not apply and the best interest analysis of *Lewellyn* would. Therefore, I would affirm the trial court.

RHONDA K. WOOD, JUDGE, dissenting.

The majority decision is wrong for two primary reasons. First, it does not apply controlling supreme court precedent. Second, it removes custody decision-making from the circuit court, transforming a question of fact into a question of law, all the while overlooking some important policy considerations. Therefore, I dissent.

### 1. The Majority Opinion Violates Stare Decisis

Our supreme court has already addressed the issues involved in the current

case in a previous, factually-indistinguishable case. *See Lewellyn v. Lewellyn,* 351 Ark. 346, 93 S.W.3d 681 (2002). In both cases, the divorce decree stated that the parents had joint custody and contained additional language stating that the mother was the "custodial parent" (*Lewellyn*) and "primary physical custodian" (this case). In both cases, the parents evenly divided physical custody. In both cases, the mother attempted to move, and both parents filed competing motions to change custody. In *Lewellyn,* the supreme court ruled that when the mother attempted to move, the parties' ability to cooperate as joint custodians was destroyed and a material change in circumstances had occurred. Accordingly, the court reasoned, the issue was change-of-custody and a relocation analysis was not appropriate. *Lewellyn, supra.*

In the current case, the mother and her new husband moved out of state, and the parties attempted to continue to exercise joint custody, which was unsuccessful. The parties filed cross motions to change custody. The circuit court, following *Lewellyn,* determined that the case was a change-of-custody case instead of a relocation case and awarded the father custody based on the child's best interest (after finding a material change in circumstances).

The majority has disregarded *Lewellyn.* This it cannot do. Our court is required to follow the supreme court, and we cannot overrule its decisions. *E.g., Rice v. Ragsdale,* 104 Ark.App. 364, 292 S.W.3d 856 (2009). Further, the doctrine of stare decisis dictates that courts follow precedent and is designed to lend predictability and stability to the law. *See Chamberlin v. State Farm Mut. Auto. Ins. Co.,* 343 Ark. 392, 36 S.W.3d 281 (2001). In other words, stare decisis promotes consistency in decision making and provides guidance for lower courts. It is the principle that cases with similar fact patterns will be treated the same. There are times when past precedent is overturned, but that is a decision for the highest court, not for intermediate courts.

Our supreme court had the opportunity to abrogate *Lewellyn* in its *Hollandsworth* decision; it did not do so. Here, the majority opinion has failed to follow our supreme court's precedent in *Lewellyn.* In so doing, it has injected confusion into our change-of-custody and relocation case law.

### 2. The Majority Opinion Alters the Standard of Review in Child–Custody Cases

Even if our court had the authority to supersede the supreme court, the majority's decision would still be incorrect. In fact, the decision fundamentally alters the way appellate courts review change-of-custody cases. One of the foundational premises of our child-custody case law is that appellate courts give "special deference to the superior position of the trial court to evaluate and judge the credibility of the witnesses in child-custody cases" because "we know of no cases in which the superior position, ability, and opportunity of the trial court to observe the parties carry as great a weight as those involving children." *Carver v. May,* 81 Ark.App. 292, 296, 101 S.W.3d 256, 259 (2003). The majority opinion eludes this longstanding deference to the circuit court by characterizing a question of fact as a question of law.

Formerly, whether the parties had joint custody was a fact question, reviewed under our deferential standard of review. For example, in *Chastain v. Chastain,* which the majority favorably cites, we upheld the circuit court's interpretation of the parties' custody arrangement as "not clearly against the preponderance of the

evidence." 2012 Ark. App. 73, at 10, 388 S.W.3d 495, 501.

Now, under the majority's reasoning, whether parents have a joint-custody arrangement or a primary-custody arrangement is a question of law. All that matters is that certain magic words of limitation appear in the divorce decree. If so, then the circuit court is now required to conduct a relocation analysis under *Hollandsworth* as a matter of law. In so doing, it must ignore what else is written in the decree and settlement agreement, and it also must ignore what is actually happening in the care of that child. Essentially, form prevails over function, and the child's fate is left to what the divorce attorney, or an online form, put in the divorce decree under the guise of "primary physical custodianship," when in fact the parties have agreed to and are practicing true joint-physical custody.

In this case, the divorce decree was at war with itself: on one hand, it said that the mother was primary physical custodian; on the other hand, it said that the parents were to divide physical custody evenly. As the fact-finder, the circuit court had to resolve this inconsistency. The court heard testimony that, since the divorce, the parents had in fact exchanged custody evenly as per the divorce and settlement agreement and that the child had spent an equal amount of time with each parent. Based on the testimony and the decree, the court found that the parents had a true joint-custody arrangement and that neither was entitled to the *Hollandsworth* presumption.[1] This finding was not clearly against the preponderance of the evidence, and we should affirm.

One final note: I also think it is useful to consider the policy behind the relocation presumption when one parent truly has primary custody. It makes sense that if a child resides primarily with one parent and that parent is the primary caregiver, then there should be a presumption in favor of the child moving with that parent if that parent needs to relocate. Continuity is important with children. That principle is not applicable when the child spends equal time with both parents, and both parents are co-caregivers in the truest sense. In these cases, the *Hollandsworth* presumption should not automatically apply solely because the decree says one party is "primary physical custodian." Instead, the circuit court should consider the decree and settlement as a whole and also take into account how the parents actually divide custody in practice. By doing this, the circuit court can tailor its decision to facts of the particular case. The majority's cookie-cutter approach, however, prohibits the court from conducting a case-by-case analysis, and, in the end, limits full consideration of the child's best interest.

HARRISON and GRUBER, JJ., join.

---

1. We have reaffirmed *Lewellyn*'s distinction between "joint-custody-relocation" cases and "custodial-parent-relocation" cases in a post-*Hollandsworth* decision. *Gray v. Gray*, 96 Ark.App. 155, 158, 239 S.W.3d 26, 29 (2006) ("The [supreme] court made it clear that joint-custody-relocation cases are different from custodial-parent-relocation cases.").