

Cite as 2013 Ark. 506

# SUPREME COURT OF ARKANSAS

**No.** CV-13-587

| | |
|---|---|
| AMALIE E. SINGLETARY<br><br><div align="right">APPELLANT</div><br>V.<br><br>JOSEPH E. SINGLETARY<br><br><div align="right">APPELLEE</div> | **Opinion Delivered** DECEMBER 12, 2013<br><br>APPEAL FROM THE LONOKE COUNTY CIRCUIT COURT [NO. DR–2009-698]<br><br>HONORABLE SANDY HUCKABEE, JUDGE<br><br><u>AFFIRMED; COURT OF APPEALS' OPINION VACATED</u>. |

**DONALD L. CORBIN, Associate Justice**

Appellant, Amalie "Amy" E. Singletary (now Bishop), appeals the order of the Lonoke County Circuit Court awarding a change in custody of her minor daughter to her former husband, Appellee Joseph E. Singletary. For reversal, she contends that the circuit court erred in failing to consider her status as a custodial parent and in failing to apply the presumption announced in *Hollandsworth v. Knyzewski*, 353 Ark. 470, 109 S.W.3d 653 (2003) that relocation by a custodial parent is not alone a material change in circumstances; she also contends that the circuit court erred in not articulating the standard of analysis for ordering a change in custody. We granted Appellee's petition for review of the decision of the Arkansas Court of Appeals that reversed and remanded the circuit court's order. *Bishop v. Singletary*, 2013 Ark. App. 394, ___ S.W.3d ___. Jurisdiction of this appeal is therefore properly in this court pursuant to Arkansas Supreme Court Rule 1–2(e) (2013). We cannot

say the circuit court was clearly erroneous; therefore, we affirm the circuit court's order granting a change in custody to Appellee. The opinion of the court of appeals is vacated.

Appellant and Appellee were divorced by decree in April 2010. They had one child, their daughter C.S., who was born in 2007. Regarding custody of C.S., the decree states that "[t]he parties shall have joint custody of the minor child with [Appellant] having primary custody. Child support and visitation shall be in accordance with the settlement agreement attached hereto and incorporated herein as if set out word-for-word." The stipulation and property-settlement agreement states that "the parties shall have joint legal custody of the parties' minor child . . . with the [Appellant] being the primary physical custodian." The agreement further states that, unless agreed upon otherwise, "the parties shall alternate custody of the minor child on a weekly basis, with visitation exchange to occur every Friday at 5:00 p.m." Finally, with respect to custody, the agreement states that the parties "shall attempt to consult with one another concerning the health, welfare, education and activities of the minor child." As for child support, the agreement makes no provision for either party to pay or receive child support. The agreement does provide, however, that Appellee would provide health insurance for C.S., that all other expenses such as orthodontic, ophthalmic, and day-care expenses would be divided evenly, and that Appellee would claim C.S. as a dependent for federal and state income-tax purposes.

Both parties remarried after the divorce. In April 2011, Appellant filed a motion for change of custody and child support, alleging therein that a material change in circumstances had occurred since the decree was entered because her current spouse was being transferred



to Fort Worth, Texas.[1] Appellant acknowledged in the motion that the parties "were granted joint custody of the minor child with [Appellant] having primary custody." Appellant acknowledged further that neither party had been ordered to pay child support. Appellant alleged that the relocation to Texas with her new husband was a change in circumstances and requested that she be granted sole custody of the child, subject to liberal visitation by Appellee, with the costs of visitation to be shared between the parties.

Appellee responded and counterclaimed for sole custody and support. He also filed several motions, including one for the appointment of an attorney ad litem and one for mediation. Prior to the hearing on the cross-motions for change of custody, the parties and the attorney ad litem attended mediation. They reached a detailed agreement as to the visitation arrangement or "parenting plan" they wanted the court to implement once the court determined who was to be granted sole custody. The gist of their agreement was that the noncustodial parent would have visitation one weekend per month, every spring break, the majority of the summer, and every other Christmas.

At the hearing on the motions for change of custody, both Appellant and Appellee testified that they had originally agreed to joint custody with Appellant as primary physical custodian; both parties testified that they understood this to mean that they would each have equal time with their daughter, but that Appellant would be the parent with the ultimate

---

[1] At the hearing on this motion, the circuit court accepted the stipulation of Appellant's counsel that it was attorney error that the motion stated that Appellant's new husband was being transferred to Texas when in truth he was seeking an elective position there.

responsibility to make final decisions about C.S.'s care. Appellant and her new husband, Gerald Bishop, testified that he had obtained a new position in Texas with a higher salary that would allow Appellant to be a stay-at-home mother to C.S. and C.S.'s younger half-siblings. Both Appellant and Appellee testified that there were no disagreements with the custody arrangement until after Appellant's relocation.

Appellant's counsel presented closing argument at the hearing and contended that Appellant should receive the presumption in favor of relocation by a custodial parent set out in *Hollandsworth*, 353 Ark. 470, 109 S.W.3d 653. Counsel for Appellee argued that *Hollandsworth* did not apply because the parties had joint custody of their child. The attorney ad litem for C.S. also presented closing argument and agreed with Appellee that the parties had a true joint-custody arrangement and that *Hollandsworth* should therefore not apply. The attorney ad litem pointed out that both parties were fit parents who had agreed to share custody of their daughter on a "fifty-fifty" basis, but that that agreement could no longer work. The attorney ad litem opined that the parties were equal in light of the factors stated in this court's Administrative Order No. 15, but did observe that all of C.S.'s extended family ties were in Arkansas and none were in Texas. The attorney ad litem stated that joint custody was in C.S.'s best interest and that he did not see how breaking the joint-custody agreement would be in C.S.'s best interest. The ad litem ultimately recommended that Appellee be given custody of C.S.

On May 8, 2012, the circuit court entered an order in which it found that the parties had joint custody of C.S. and that Appellant's relocation and the parties' inability to cooperate

SLIP OPINION

constituted a material change in circumstances. The order reflects that the circuit court then considered the child's extended family relationships in Arkansas and the recommendation of the child's attorney ad litem when concluding that a change in custody to Appellee would be in the child's best interest. Accordingly, the circuit court's order awarded sole custody of the child to Appellee. The circuit court did not apply *Hollandsworth* in making its decision, but did cite *Lewellyn v. Lewellyn*, 351 Ark. 346, 93 S.W.3d 681 (2002), for the general proposition that, when a trial court changes custody of a child, the court must first determine that a material change in circumstances has transpired since the time of the divorce, and then determine that a change in custody is in the child's best interest.

Appellant's appeal to the court of appeals followed. The court of appeals decided the appeal in Appellant's favor and reversed and remanded the case to the circuit court. *Bishop*, 2013 Ark. App. 394, ___ S.W.3d ___. As noted, we granted Appellee's petition for review of that decision.

When this court grants a petition to review a decision by the court of appeals, we review the appeal as if it had been originally filed in this court. *Lewellyn*, 351 Ark. 346, 93 S.W.3d 681. This court has traditionally reviewed matters that sounded in equity de novo on the record with respect to fact questions and legal questions. *Id.* We have stated repeatedly that we would not reverse a finding by a trial court in an equity case unless it was clearly erroneous. *Id.* We have further stated that a finding of fact by a trial court sitting in an equity case is clearly erroneous when, despite supporting evidence in the record, the appellate court viewing all of the evidence is left with a definite and firm conviction that a

mistake has been committed. *Id.* We also give due deference to the superior position of the chancellor or circuit court to view and judge the credibility of the witnesses. *Stills v. Stills*, 2010 Ark. 132, 361 S.W.3d 823. These common-law principles continue to apply after the adoption of amendment 80 to the Arkansas Constitution. *Lewellyn*, 351 Ark. 346, 93 S.W.3d 681.

Appellant's first and third points for reversal are so closely related that we consider them together. Appellant's first point for reversal is that the circuit court erred in failing to take into consideration her status as primary custodial parent. Her third point for reversal is that, as the alleged custodial parent, she was entitled to the presumption announced in *Hollandsworth*, 353 Ark. 470, 109 S.W.3d 653, that relocation by a custodial parent alone does not constitute a material change in circumstances. In short, Appellant takes the position that her status as "primary physical custodian" in a "joint-custody" arrangement is the equivalent of having been given sole custody such that her petition for change of custody should be analyzed under *Hollandsworth*. Appellant argues that the circuit court erred in disregarding the *Hollandsworth* analysis and applying the analysis of *Lewellyn* instead.

Appellee acknowledges Appellant's status as primary physical custodian, but contends that status does not alter the joint-custody relationship the parties agreed to and in fact enjoyed with their child prior to Appellant's relocation. Appellee responds that *Lewellyn* is the controlling precedent here because *Lewellyn* applies when the parties share joint custody. Because the parties do have joint custody, Appellee's argument continues, *Hollandsworth's* presumption that a custodial parent's relocation does not alone constitute a material change


SLIP OPINION

in circumstances simply does not apply to Appellant. In short, Appellee contends that *Hollandsworth* does not apply to a joint-custody arrangement.

We begin our analysis with a review of the *Hollandsworth* opinion. First and foremost, we observe that the term "joint custody" does not appear anywhere in the *Hollandsworth* decision, although the term "primary custody" does, as do the terms "custodial parent" and "noncustodial parent." When describing the custody agreement of the parties in *Hollandsworth*, this court stated as follows:

> According to the divorce decree, appellant was awarded *primary custody of the parties' two children, subject to visitation by appellee*. The divorce decree went on to find that appellant and appellee were each entitled to one-half of the children's *free* time, which the trial court set out as being weekends, holidays, and summer vacations. The trial court further set out a schedule of visitation if the parties could not otherwise agree. The parties thereafter negotiated a more liberal visitation schedule that allowed appellee to be with the children three and one-half days per week *until the eldest child began kindergarten*.

*Id*. at 472–73, 109 S.W.3d at 655 (emphasis added). The foregoing relationship described in *Hollandsworth* was not a joint-custody arrangement. Rather, *Hollandsworth* involved a situation of sole custody with primary custody of the children being given to one parent, the custodial parent, and visitation during half of the children's free time being given to the other parent, the noncustodial parent. That the *Hollandsworth* case involved a sole- or primary-custody arrangement, as opposed to a joint-custody arrangement, is further evident in the language of this court announcing its holding:

> We agree and hold that relocation of a *primary custodian* and his or her children alone is not a material change in circumstance. We announce a presumption in favor of relocation for *custodial parents with primary custody*. The *noncustodial* parent should have the burden to rebut the relocation presumption. The custodial parent no longer has



the responsibility to prove a real advantage to herself or himself and to the children in relocating.

.  .  .  .

The polestar in making a relocation determination is the best interest of the child, and the court should take into consideration the following matters: (1) the reason for the relocation; (2) the educational, health, and leisure opportunities available in the location in which the custodial parent and children will relocate; (3) visitation and communication schedule for the noncustodial parent; (4) the effect of the move on the extended family relationships in the location in which the custodial parent and children will relocate, as well as Arkansas; and, (5) preference of the child, including the age, maturity, and the reasons given by the child as to his or her preference.

*Id.* at 476, 485, 109 S.W.3d at 657, 663–64 (emphasis added).

We clarify today that the *Hollandsworth* relocation presumption applies only in those cases where a parent has been granted sole or primary custody of a child. We further clarify that the *Hollandsworth* relocation presumption simply does not apply when the parents share joint custody of a child. This is so because the rationale for the *Hollandsworth* presumption simply does not apply to a joint-custody arrangement. The purpose of the *Hollandsworth* decision was to recite and adhere to this court's historical recognition of the right of a custodial parent to relocate and take the children with him or her and to thereby correct the court of appeals' erroneous departure from that historical precedent in favor of the erroneous "real advantage" test. *See id.* at 475, 109 S.W.3d at 657. The rationale behind *Hollandsworth* was to preserve and protect the stability of the relationship between the child and the custodial parent with whom the child spent the majority of his time, while balancing the custodial-parent's right to relocate. *Id.* However, in a true joint-custody arrangement, both parents share equal time and custody with the child; therefore, there is not one child-parent



relationship to take preference over the other. The rationale of the *Hollandsworth* relocation presumption simply does not apply to a parent who has joint custody and desires to relocate. We do not retreat from the relocation presumption announced in *Hollandsworth*, but clarify that it is not applicable when the divorcing parents have joint custody of their children.

We further clarify that the proper analysis for a court facing a change-in-custody request due to relocation of one parent when the parents have joint custody was announced by this court in *Lewellyn*. That analysis, however, is essentially the same as a change-in-custody analysis when relocation is not involved. *See Lewellyn*, 351 Ark. at 357, 93 S.W.3d at 687 (stating that the trial court was correct in refusing to apply relocation analysis and instead analyzing case as "purely one involving change of custody"). Thus, as this court stated in *Lewellyn* when a change-of-custody was sought in a joint-custody arrangement, the trial court "must first determine that a material change in circumstances has transpired from the time of the divorce decree and, then, determine that a change of custody is in the best interest of the child." *Id.* at 355, 93 S.W.3d at 686 (citing *Lloyd v. Butts*, 343 Ark. 620, 37 S.W.3d 603 (2001)).

Having determined that *Lewellyn* applies to relocation cases where parents share joint custody and that *Hollandsworth* applies to relocation cases where one parent has sole or primary custody, we must now consider the propriety of the circuit court's finding that the parties in the present case had agreed to and did in fact share joint custody of their daughter. We begin by looking to the contracts involved—in this case that is the divorce decree, which also incorporates by reference a property-settlement agreement as to custody and visitation.

This court set forth the applicable standard of review for issues of contract interpretation in *Wal-Mart Stores, Inc. v. Coughlin*, 369 Ark. 365, 371, 255 S.W.3d 424, 429 (2007) (citations omitted) (quoting *Alexander v. McEwen*, 367 Ark. 241, 244, 239 S.W.3d 519, 522 (2006)):

> The first rule of interpretation of a contract is to give to the language employed the meaning that the parties intended. In construing any contract, we must consider the sense and meaning of the words used by the parties as they are taken and understood in their plain and ordinary meaning. The best construction is that which is made by viewing the subject of the contract, as the mass of mankind would view it, as it may be safely assumed that such was the aspect in which the parties themselves viewed it. It is also a well-settled rule in construing a contract that the intention of the parties is to be gathered, not from particular words and phrases, but from the whole context of the agreement.

This court has explained further that when an ambiguity exists in a contract, we are permitted to look outside the contract to determine the actual intent and conduct of the parties. *Rockefeller v. Rockefeller*, 335 Ark. 145, 980 S.W.2d 255 (1998). In arriving at the intention of the parties, the courts may consider and accord considerable weight to the construction of an ambiguous contract or deed by the parties themselves, evidenced by subsequent statements, acts, and conduct. *Id.*

Referring to the contract language recited at the beginning of this opinion, we see that the issue in this case is the interpretation of the following language in the divorce decree: "The parties shall have joint custody of the minor child with [Appellant] having primary custody." The decree's use of the term "joint custody" along with the term "primary custody" is ambiguous on its face. According to the above-cited rules of contract interpretation, we resolve the ambiguity by looking to other parts of the contract and to the

SLIP OPINION

parties' testimony about what they intended, as well as to their conduct. *See id.* In looking at all these factors, it is uncontroverted that the parties intended a true joint-custody arrangement and that they did in fact enjoy a true joint-custody arrangement. Other parts of the decree, as well as the separation agreement that was incorporated therein, indicate that C.S.'s time would be divided between the parties on a weekly basis and that decisions regarding C.S.'s care, as well as expenses associated with her care, would be divided equally. We observe the recent definition of "joint custody" adopted by the General Assembly in a 2013 amendment to Arkansas Code Annotated § 9-13-101(a)(5) (Supp. 2013): "'joint custody' means the approximate and reasonable equal division of time with the child by both parents individually as agreed to by the parents or as ordered by the court." The testimony at the hearing in this case of the parties' intent was undisputed that equal time with their daughter was intended, and the parties conduct confirmed that, as both parties testified that they did, in fact, share equal time with C.S. And that is indeed what the circuit court found when it concluded that these parties had agreed to a "true 50/50 arrangement with the parties having equal time with their child with both parties in close proximity in Arkansas."

Because the circuit court correctly found that the parties in the present case enjoyed a true joint-custody relationship despite the designation of Appellant as "primary physical custodian" for the purpose of having the final decision as to the child's care, we conclude that the circuit court did not err in failing or refusing to apply the *Hollandsworth* presumption in favor of Appellant. Likewise, because the circuit court correctly found that the parties have

SLIP OPINION

a true joint-custody relationship, we conclude that the analysis of *Lewellyn* was the controlling precedent to be applied by the circuit court.

Turning now to Appellant's second point on appeal, we consider her argument that the circuit court erred in failing to articulate the analysis it used in granting a change of custody. Initially, we note that Appellant has not pointed us to anything in the record to demonstrate that she made a timely request for specific findings and conclusions pursuant to Rule 52 of the Arkansas Rules of Civil Procedure. Even assuming arguendo that she did make such a timely request, we conclude that her argument is wholly without merit. The circuit court expressly articulated that it was applying the change-in-custody analysis of *Lewellyn*, whereby it must first find that a material change in circumstances has transpired since the divorce and that a change in custody is in the best interest of the child. The circuit court then found as follows:

> 8. With [Appellant's] move to Texas, along with the impracticality of the parties' continuing to exercise joint custody and the parties' lack of cooperation in decisions that affect the child's welfare, the Court finds there to be a material change in circumstances.
>
> 9. The Court then considers the child's best interests in determining whether to grant a change in custody.
>
> 10. In determining the child's best interest, the Court has considered, the moral fitness, stability, and love and affection of the parties. The Court has also considered the child and all her family relationships, including her extended family relationships in Arkansas. The Court further finds that both [Appellant]'s husband and [Appellee]'s wife are positive influences in the child's life. The Court has also considered the recommendation of . . . the child's attorney ad litem.
>
> 11. In sum, the Court has weighed the totality of the considerations in favor of [Appellee] being granted custody of [C.S.], though not to a significant degree.

[Appellant] shall have visitation with [C.S.] as previously agreed to by the parties . . . . The Court specifically finds said custody and visitation to be in [C.S.]'s best interest.

12. Since [Appellant] is currently unemployed, the Court sets her child support at the chart minimum, which is $26/week.

Given the foregoing analysis of the circuit court, Appellant's argument that the circuit court failed to articulate an analysis is wholly without merit. In addition, we simply cannot say on this record that the circuit court's findings were clearly erroneous. The circuit court's order granting a change in custody from joint custody to sole custody in Appellee with visitation to Appellant is affirmed. The opinion of the court of appeals is vacated.

Affirmed; court of appeals' opinion vacated.

BAKER and HART, JJ., dissent.

**KAREN R. BAKER, Justice, dissenting.** Because the majority's decision stands in conflict with our case law on the *Hollandsworth* presumption, I must dissent.

The majority clarifies that the *Hollandsworth* presumption applies only in cases where a parent has been granted sole or primary custody of a child, and does not apply when parents share joint custody of a child. *Hollandsworth v. Knyzewski*, 353 Ark. 470, 109 S.W.3d 653 (2003). However, in *Blivin v. Weber*, 354 Ark. 483, 126 S.W.3d 351 (2003), this court reversed and remanded for the circuit court to reconsider the case in light of the standard and factors set out in *Hollandsworth*, which had been decided after the circuit court made its ruling. We stated, "The divorce decree provided that the parties would share joint legal custody of the children, but that Jamai would have primary physical custody." Here, as well, the

SLIP OPINION

settlement agreement incorporated in the divorce decree states that both parties would have joint legal custody of C.S., with Amy being the primary physical custodian.

The majority states that *Lewellyn v. Lewellyn*, 351 Ark. 346, 93 S.W.3d 681 (2002), announces the proper analysis for a court facing a change-in-custody request due to relocation of one parent when the parents have joint custody. However, *Lewellyn* was decided before both *Hollandsworth* and *Blivin*. I do not see how *Lewellyn* can control this issue when later cases, which are directly on point, stand in opposition to it.

Further, the majority sets out a distinction where none exists. The majority distinguishes *Hollandsworth* and *Lewellyn* by stating that *Lewellyn* controls in joint-custody situations and *Hollandsworth* controls when one parent has primary custody. However, in *Lewellyn*, even though the parents had joint legal custody, the divorce decree designated one parent as the "custodial parent" and the other as the "non-custodial parent." In *Hollandsworth*, the divorce decree designated one parent as the "custodial parent" and the other as the "non-custodial parent," and, as the majority states, the parties negotiated a more liberal visitation schedule that allowed both parents to have the child three-and-a-half days per week.

Therefore, the only difference that the majority sets out between *Hollandsworth* and *Lewellyn* is whether there is a specific statement in the divorce decree that the parents share joint "legal" custody. In so deciding, the majority places the right of a custodial parent to relocate in the balance based on boilerplate language added to divorce decrees. The majority then goes on to state that if there is a specific statement of joint "legal" custody in the divorce decree and one parent is designated the primary custodial parent, this creates an ambiguity in

the decree, and the circuit court must look to the conduct and intent of the parties to see whether the arrangement is "a true joint-custody arrangement." Yet the majority gives no guidance to law practitioners on when custody is "a true joint-custody arrangement" and when it is not. In *Hollandsworth*, the arrangement was not a true joint-custody arrangement, even though both parents shared equal time with the child. In *Lewellyn*, there was a true joint-custody arrangement, even though there was a custodial parent and a noncustodial parent. In *Blivin*, the *Hollandsworth* presumption applied, even though both parties enjoyed joint custody. Here, the majority decides that custody was a true joint-custody arrangement, even though there was a primary custodial parent, and holds that the *Hollandsworth* presumption does not apply. In clarifying the law, the majority has left settled law far more opaque.

Following our precedent set out in *Blivin*, I would reverse and remand to the circuit court for reconsideration based on the standard and factors set out in our *Hollandsworth* decision.

HART, J., joins in this dissent.

*Law Office of Kathryn L. Hudson*, by: *Kathryn L. Hudson*, for appellant.

*Gregory Crumpton*, for appellee.