SLIP OPINION     Cite as 2015 Ark. App. 468

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV–15–39

| | | |
|---|---|---|
| | | **Opinion Delivered** September 9, 2015 |
| KELLY F. JONES | APPELLANT | APPEAL FROM THE LONOKE COUNTY CIRCUIT COURT [NO. DR–12–925] |
| V. | | |
| MICHAEL J. JONES | APPELLEE | HONORABLE WILL FELAND, JUDGE |
| | | AFFIRMED |

### WAYMOND M. BROWN, Judge

Appellant Kelly Jones appeals the order of the Lonoke County Circuit Court denying her request to relocate with her two minor children. For reversal, she contends that the trial court erroneously relied on *Singletary v. Singletary*,[1] when *Hollandsworth v. Knyzewski*[2] was the appropriate case law in this situation. We find no error and affirm the trial court.

Appellant and appellee, Michael Jones, were divorced by decree on January 18, 2013. At the time of the divorce, the parties had two sons, J.M.J. (DOB 12–11–05) and L.A.J. (DOB 8-1-07). Regarding custody, the decree stated that "the parties shall exercise joint legal custody of . . . minor children with [appellant] being the primary custodial parent. [Appellee] will exercise visitation every other weekend from Friday at 4:00 p.m. to Sunday at 6:00 p.m.

---

[1]2013 Ark. 506, 431 S.W.3d 234.

[2]353 Ark. 470, 109 S.W.3d 653 (2003).

as well as every Monday from the time school is dismissed until Tuesday at 8:00 p.m." The holiday visitation schedule alternated each year. Appellant was granted visitation on Mother's Day yearly, and appellee was granted yearly visitation on Father's Day. The decree allowed for each party to spend four hours with each child on his birthday. Additionally, appellee was granted seven weeks of summer visitation with the children. Per the decree, each party was required to give the other party at least sixty days' notice of any residence changes. Appellee was ordered to pay monthly child support in the amount of $1,343.16; however, the amount would abate by 50% anytime appellee had the children in his custody for over fourteen consecutive days. Appellee was required to provide health insurance for the children[3] and to pay appellant $300 a month for childcare services until May 2013. For tax purposes, appellee would claim J.M.J., and appellant would claim L.A.J.

Appellee remarried on January 30, 2013. Appellee filed a motion for modification of custody on February 21, 2013, alleging that there had been a material change in circumstances, including appellant's notice to appellee eighteen days after the divorce that appellant planned to relocate the children to West Virginia. The court entered a restraining order the same day, enjoining each party from removing the children out of the jurisdiction except by prior court permission. Appellant filed a response on March 4, 2013. On March 11, 2013, appellant filed a motion for a temporary order to relocate. Appellee filed an answer and application for stay on March 18, 2013, due to the fact that he had recently been

---

[3]All other expenses not covered by the insurance would be divided evenly.

deployed to Afghanistan and did not anticipate being home before September 2013.[4] Appellant filed a reply to appellee's response to her motion to relocate as well as a response to appellee's application for stay on April 2, 2013. On April 29, 2013, appellant filed a motion to modify child support. Appellee filed an answer on May 3, 2013.

On June 24, 2013, a temporary hearing took place regarding the restraining order. Another temporary hearing on appellee's motion to modify custody and appellant's motion for relocation and modification of child support took place on August 28, 2013. An attorney ad litem was appointed in August 2013. The court entered a temporary order on November 18, 2013. In the order, the court stated that it was not in the children's best interest to modify the divorce decree at that time. Additionally, the court found that L.A.J.'s health was not facilitated by a long-distance relationship,[5] and the parties needed to reside in the same geographical area and learn how to co-parent. The order also modified visitation as it had been informally modified by the parties, which was: (1) off weeks, Wednesdays after school until 7:30 p.m. and Thursdays after school until 8:00 a.m. Saturday; and (2) on weeks, Wednesdays after school until 7:30 p.m. and Thursdays after school until Sunday at 6:00 p.m. The court scheduled a final hearing for February 19, 2014.

At the hearing, Lt. Col. James Burgess, appellee's commander, testified that it was unlikely that appellee would be deployed in the future because appellee was being changed to an instructor pilot and his permanent station would be at the Little Rock Air Force Base.

---

[4]He returned in June.

[5]He has attention deficit hyperactivity disorder (ADHD) and oppositional defiant disorder (ODD).

However, Burgess admitted that although appellee was not scheduled for any upcoming deployments, that could change before appellee begins his new assignment.

Appellee testified that he had three years left before he could retire. He stated that he and appellant both shared significant time with the children and that they were able to get along better following the temporary hearings. He said that he and appellant communicate through a program called Our Family Wizard, which saves and documents all communication. Appellee testified that he had been flexible to all of appellant's requests for changes to visitation. He stated that he was involved with the children's school and extracurricular activities. He also said that he had been involved in L.A.J.'s therapy; however, L.A.J. was no longer in therapy at the time of the hearing.[6] Appellee stated that he had the children almost 50% of the time. He introduced calculations from a program called Custody Exchange that reflected that the children were with him 49% of the time and that they stayed overnight with him 43% of the time. As to appellant's location, appellee stated:

> I know that she wants to relocate the children to West Virginia. I do not agree with that. I believe the relocation would have an effect on my relationship with the children. Well, currently, I typically go – – in a typical week, the only day I don't see them is on Tuesday, so I've got them Wednesday, Thursday, Friday. Saturday, I see them, and then if it's my week, Sunday, of course, I see them. So every other Sunday, I don't see them and every Tuesday I don't see them, but the other days – – even on Monday that's not my day, I see them at Boy Scouts. I see them 12 of the 14 days now.
>
> . . . .
>
> Her relocation place, that's twelve-, thirteen-hour drive. Nautical miles, about 830. Maybe a thousand driving. It absolutely requires a long day's travel in a vehicle. The

---

[6] L.A.J. had a 504 Plan implemented by his school.

4

SLIP OPINION

cost? I mean, there and back, to fly in my plane, you're looking at probably, 1,200 bucks.

She's not remarried. She says she has a rent-free house there. I am familiar with that house. I am familiar with the condition of it. It's an extremely old - - extremely, extremely old house. I have done a comparison of the schools in the West Virginia location compared to the schools here. . . . [In] Cabot School District[,] . . . 96.7 percent is proficient and advanced in literacy. West Virginia was 48.1. Cabot Schools, math was 95.7. West Virginia was 34.6 in math. In my opinion, the Cabot Schools are much better than the schools in West Virginia.

On cross-examination, appellee stated that appellant did not take the children to the doctor and dentist 100% of the time. He said that the cost of fuel for his plane to make a round-trip from Arkansas to West Virginia was not $1,200, but that other things had to be accounted for when flying a private plane. Appellee testified that he agreed to the visitation as listed in the decree because it resulted in "more of a 50/50 split." He stated that appellant would hold her relocating with the children "over his head" if she could not get her way.

On redirect, appellee stated that he had step-children that enjoyed seeing his children during visitation. He testified that he took the children to West Virginia the last time they went, and that appellant had not visited West Virginia with the children since the divorce.

Michael Brown testified that he was once married to appellee's wife, Andrea, and that they have two children together. He stated that he and appellant were currently in a relationship and that they "may be planning on getting married in the future." He said that appellant spent Thanksgiving and Christmas with him at Kessler Air Force Base in Biloxi, Mississippi.

Appellant testified that she spent the holidays with Brown because she did not want to be alone. She stated that she did not go to West Virginia because she did not have that

long of a break. She said that L.A.J. would be offered a 504 Plan in West Virginia. She

testified:

> When we went over the *Hollandsworth* factors the last time, all those are still available to me in terms of a place to live. I own a home there. This is a home that my mother just quitclaimed interest to me. I have a job lined up there at the hospital. And that job allows me to work more hours than the job here. I will work three 12-hour shifts a week. And my family will be available if I need babysitting, 24/7 availability. My family, as well as [appellee's] family.

Appellant stated that she and Brown were not engaged to be married and that they had never

been engaged. She said that she was not contemplating moving to Mississippi, but that her

intention had always been to move back to West Virginia, even before the divorce decree was

signed.

On cross-examination, appellant stated that she had family members in West Virginia

to take care of the children if she was not available. She said that appellee could visit. She

testified that her salary would increase if she relocated from $27 an hour to $28.10 an hour.

She also stated that her commute would be drastically less. She admitted that she told appellee

that she was moving to Mississippi, but stated that it was just a "smart-aleck comment" she

made because appellee stole her phone and read a private conversation between her and

Brown. She testified that appellee knew of her intentions to move back to West Virginia

before their divorce was final. According to appellant, that is why the decree stated that they

had to give sixty-days' notice. Appellant testified that she notified appellee eighteen days after

their divorce that she was moving to West Virginia. She stated that it was never her intent

to have a "50/50 split joint custody" because she planned on moving with the children. She

said that appellee was fully aware of her intent to move before the divorce. She testified that appellee told her that he would not fight her move if she waited until November 2013.

On redirect, appellant stated that she would make an additional ninety-three dollars a week if she relocated. She also said that her expenses would be less because she would not have a mortgage payment, she would have basic utilities, and she would not have to spend a lot on gas.

Appellee was recalled, and on cross-examination, he stated that he and appellant went back and forth about the language used in the decree. He said that he agreed to allow appellant to be named the primary custodial parent because the visitation resulted in him having the children about half of the time regardless of appellant's title. He stated that if appellant was allowed to relocate with the children, it would go from him seeing them half of the time to probably only seeing them once a month.

On redirect, appellee stated that if appellant was allowed to relocate, he would not be able to participate in all of the activities with the children that he does now.

The hearing concluded without the court making a ruling. On June 18, 2014, appellee filed an ex parte motion for an order to prevent appellant from removing the children outside of Lonoke County. Appellant filed a response on June 19, 2014. The court issued a letter opinion on June 23, 2014, denying appellant's motion for relocation. The court also found that there was not a material change in circumstances to modify custody. It did, however, find that the shared time with the children should be amended to reflect the actual practice of the parties.

7

The court held a hearing on appellee's motion on June 24, 2014. At the hearing, appellee testified that appellant had informed him of her intent to move the children to North Little Rock while the court's ruling was pending. He stated that he did not want the children located outside of the Cabot area. He said that he had compared the graduation rate between Cabot schools and North Little Rock schools and stated that there was a big difference in the percentages. He also stated that it would make it difficult for him to pick the children up on Wednesday and have the same amount of visitation time with them. He asked the court to put a provision in the order that prevented appellant from relocating the children outside of the Cabot School District.

On cross-examination, appellee stated that he moved from Lonoke County in May. He said that he did not give appellant sixty days' notice. He admitted that during the last school year, a babysitter picked the children up from school on two or three occasions.

On redirect, appellee stated that he was still in the Cabot School District although he had moved.

Appellant testified that she had given appellee indication that she was moving. She asked the court not to restrict her ability to move outside of Lonoke County. She stated that if she moved the children to North Little Rock, it would be the same distance from the Air Force Base for appellee to pick them up from the school in North Little Rock as it would be for him to pick them up in Cabot. She said that the children attend activities in North Little Rock three days a week.

SLIP OPINION

The court entered a final order on September 9, 2014. In the order, the court found that appellant's relocation was controlled by *Singletary*, not *Hollandsworth*. According to the court, the parties shared joint custody, and appellant was not entitled to the *Hollandsworth* presumption. The remainder of the order stated in pertinent part:

9. As stated, the Decree's language of very much mutual parenting in paragraphs 11, 12, and 13 of the Divorce Decree reinforce the clear joint custody language of paragraph 5. Indeed, the practice of the parties since the entry of the Decree reflects the flexibility of adapting to their respective schedules and mutual involvement in the academic, extracurricular and counseling activities of the children which gives life to the very concept of joint parenting. All this would indicate that *Singletary* be controlling.

10. To allow the relocation would have the effect of changing the entire character of joint custody as set forth in the Decree and as practiced in the months following.

11. Further, to change the key role in the lives of the children by both parents is not in the children's best interests at this point. Especially with the special needs of L.J., I believe the stability and the continued involvement of each parent is vital to his health, education, and development. The parents should continue to participate in counseling as recommended.

12. It is appropriate to amend the shared time with the children as set forth in paragraph 10 of the Order entered on November 18, 2013, to reflect the actual practice of the parties, to wit:

Visitation shall be as it had been informally modified by the parties prior to Plaintiff's deployment, which has been informally modified by agreement of the parties since the hearing to be alternating weeks of custodial time for Plaintiff as follows:

a. Off weeks: Wednesdays from after school until 7:30 p. m. and Thursday after school until 8:00 a. m. Saturday.

b. On weeks: Wednesday after school until 7:30 p.m. and Thursday after school until Sunday at 6:00 p. m.

13. Other than the clarification of shared time to reflect the practice of the parties, there is no material change of circumstances to modify custody by the Plaintiff, nor is the relocation appropriate as set forth more specifically hereinabove.

14. Considering the joint custody role of the parties, any move outside of the present school district without prior consent of the other party, that would be considered by the Court as a possible material change of circumstances which would merit a review of the custodial arrangement of the children[.]

Appellant filed a timely notice of appeal. This appeal followed.

Appellant argues that the trial court erred in failing to find that she was allowed to relocate with the children. She contends that as the custodial parent, she was entitled to the presumption in favor of relocation for a custodial parent announced in *Hollandsworth*. Appellee maintains that the court's decision to follow *Singletary* was not in error because the parties enjoyed joint custody of the children.[7]

In *Singletary*, our supreme court held that in joint–custody relocation cases, the focus is whether or not there has been a material change in circumstances and the best interests of the children. As in *Singletary*, the trial court was faced with ambiguous language: on one hand the parties are to share joint legal custody; and on the other hand, appellant is named the primary custodian. When a contract is ambiguous on its face, we resolve the ambiguity by looking at other parts of the contract, the parties' testimony about what they intended, as well as their conduct.[8]

Here, appellant testified that she did not intend to share joint legal custody with appellee, and that is why she was named primary custodian. Appellee testified that it was his

---

[7]We note that appellee's argument is not in compliance with Rule 4–2(a)(7) of the Arkansas Supreme Court and Court of Appeals in that appellee failed to include page references to the abstract and/or addendum. If appellant had submitted an argument with this error, we would have ordered rebriefing. We remind counsel that the rules are not just for an appellant's brief but for all appellate briefs submitted to this court.

[8]*Rockefeller v. Rockefeller*, 335 Ark. 145, 980 S.W.2d 255 (1998).

intent to share the children equally, and that since the decree granted him nearly half of the time with the children, he did not mind appellant being called the primary custodian. The decree itself called for mutual parenting. Additionally, the parties' conduct regarding time spent with the children indicates joint custody. Under these circumstances we cannot say that the trial court erred in refusing to apply the *Hollandsworth* presumption in favor of appellant. Additionally, we hold that the trial court did not err in finding that there had not been a material change in circumstances and that relocation by appellant was not in the children's best interest. Therefore, we affirm.

Affirmed.

GLADWIN, C.J., and VIRDEN, J., agree.

*Worsham Law Firm, P.A.*, by: *Richard E. Worsham*, for appellant.

*Law Office of Vickie Lynn Cochran*, by: *Vickie Lynn Cochran*, for appellee.