RITA W. GRUBER, Chief Judge
On September 27, 2017, we issued an opinion dismissing this appeal for lack of jurisdiction. Appellant filed a petition for rehearing, asking this court to reconsider the decision. We grant the petition, issue this substituted opinion, and reverse and remand.
Ronald Shelton Tidwell appeals from the Hempstead County Circuit Court's order allowing appellee Lauren Madison Rosenbaum to relocate to Florida with their minor child, A.T. On appeal, Tidwell contends that the circuit court made a mistake of law when it interpreted the original agreed custody order as granting Rosenbaum "sole custody" when the express terms of the agreed order had granted the parties "joint custody." We reverse the circuit court's order and remand for further proceedings.
Tidwell and Rosenbaum have one child together, A.T. Tidwell filed a petition to establish paternity and award custody in 2012.[1] The circuit court executed an agreed order of paternity, custody, and support on March 12, 2013. The court found Tidwell to be the "actual, legal and biological father" of A.T. and provided the following regarding custody and visitation:
3. [Tidwell] and [Rosenbaum] are granted joint custody of said minor child born to them, with primary physical custody and custodial residence being awarded to [Rosenbaum].
*230 4. [Tidwell] is granted visitation with said minor child as follows:
(a) Sunday at 6:00 p.m. until Tuesday at 6:00 p.m.; then Friday of the same week from 6:00 p.m. until Sunday at 6:00 p.m.; then the following Wednesday at 6:00 p.m. until Thursday at 6:00 p.m.; whereupon the foregoing two-week rotation will resume per the foregoing on Sunday at 6:00 p.m. and so forth.
(b) Holiday visitation shall be as outlined for a child of three (3) years or older in this Court's Standard Order Regarding Child Visitation and Related Matters (a copy of which is attached hereto and incorporated herein);
(c) Exchanges of the child shall be carried out by the parties or responsible adult and unless the parties agree otherwise, shall be as provided in this Court's Standard Order Regarding Visitation and Related Matters;
(d) [Tidwell]'s overnight visitation shall take place at [Tidwell]'s parent's home; and,
(e) All other provisions of this Court's Standard Order Regarding Visitation and Related Matters not inconsistent with the terms hereof are incorporated herein.
On June 4, 2015, Rosenbaum filed a motion to "modify custody relocation restrictions," alleging that the circuit court's standard visitation order prohibited her from removing A.T. from the state except for brief trips and vacations without the advance written permission of the circuit court or from "permanent removal without a hearing unless both parties have agreed in writing to the removal with notarized signatures." Rosenbaum alleged that the agreed order granted her primary physical custody and custodial residence; that a material change of circumstances had occurred since the entry of the agreed order; and that it was in A.T.'s best interest to allow her to relocate with A.T. to Lake City, Florida. Rosenbaum stated that she was now married and that her husband, Michael Boyle, had obtained a job transfer with his employer to move to Florida. Rosenbaum and Boyle also have a child together, and Boyle's ex-wife had custody of two of his children in Florida. Rosenbaum additionally alleged that she would be able to pursue her nursing degree in Florida and that A.T. would benefit by being able to continue her relationship with her one-year-old brother, six-year-old stepbrother, and seven-year-old stepsister once they are in Florida.
Tidwell filed a response, alleging that it was not in the child's best interest to move to Florida. Additionally, Tidwell filed a counterclaim, alleging that he had no objection to Rosenbaum moving to Florida but requesting that joint custody be terminated and that he be granted sole legal custody if Rosenbaum moved. Rosenbaum filed a response and requested that the counterclaim be denied in its entirety.
The circuit court held a hearing on August 26, 2016. Rosenbaum testified that she lived in Hope with A.T., her husband Michael, and her son B.B. She said that Tidwell is A.T.'s father and that she had lived some with her parents and some with Tidwell's parents when she was pregnant with A.T. until six weeks after A.T. was born. She testified that the parties had joint custody with her being primary physical custodian with the sole right to determine where A.T. lived. Rosenbaum testified that she desired to relocate with A.T. to Florida because Michael had a new position with his employer that would allow him to move to Lake City, Florida, where two of Michael's children live. Rosenbaum testified that her parents and extended family live in Arkansas and did not want her to move to Florida. Although the original agreed order granted less visitation, *231 Rosenbaum admitted that Tidwell had been exercising visitation with A.T. fourteen days a month and that A.T. has a close relationship with him. In fact, Rosenbaum testified that if Tidwell asked to see A.T. more than fourteen days a month, she would allow it.
Tidwell testified that he is married and that he and his wife have a child together. Although he admitted that he had occasionally been behind on child support, he said that he was current at the time of the hearing and had never been behind more than two weeks. Tidwell testified that although the agreed order provided that overnight visitation would occur at his mother's home, the parties had orally modified the agreement to allow visitation in his home. Tidwell acknowledged that Rosenbaum is a good mother and that she is the proper person to have primary physical custody of A.T. unless she moved to Florida. Tidwell additionally admitted that Rosenbaum took A.T. to all of her medical, dental, and optometrist appointments and had never presented him with a bill or asked him to pay for those appointments.
When asked about what joint custody meant to him, Tidwell responded that "joint custody gives me the right to take A.T. to the doctor, be A.T.'s caregiver, and to participate in the major decisions in her life." Tidwell argued that visitation and participation in A.T.'s life would be difficult if Rosenbaum and A.T. moved to Florida since he spent at least twelve to fourteen days a month with A.T. in his custody.
The circuit court found in favor of Rosenbaum, allowing her to relocate with A.T. to Florida. The court did not find a material change of circumstances and did not go through an analysis regarding primary versus joint custody pursuant to the Hollandsworth and Singletary[2] line of cases; rather, it based its decision on the parties' "agreed" order, finding as follows:
That this case does not present the legal or factual situation of an existing true joint custody case because the parties had previously Ordered that primary physical custody of the minor child was vested with the Mother, who was also granted the sole right to determine the residence of the Child, all as set forth in this Court's prior Order of March 12, 2013[.]
Tidwell brings this appeal contending that the circuit court made a mistake of law when it interpreted the original agreed custody order as granting Rosenbaum "sole custody" when the express terms of the agreed order grant the parties "joint custody." Tidwell does not contest best interest. Instead, he specifically argues that the circuit court correctly found that there was no material change of circumstances but erred when it failed to determine that the parties had true joint custody under the agreed order.
In reviewing child-custody cases, we consider the evidence de novo, but we will not reverse the circuit court's findings unless they are clearly erroneous or clearly against the preponderance of the evidence. McNutt v. Yates , 2013 Ark. 427, at 8, 430 S.W.3d 91, 97. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been made. Boudreau v. Pierce , 2011 Ark. App. 457, at 11, 384 S.W.3d 664, 671. It is well settled that the primary consideration is the welfare and best interest of the child, while other considerations are merely secondary.
*232 McNutt , 2013 Ark. 427, at 8, 430 S.W.3d at 97. We give special deference to the superior position of the circuit court to evaluate and judge the credibility of the witnesses in child-custody cases, and this deference to the circuit court is even greater in cases involving child custody, as a heavier burden is placed on the circuit court to utilize to the fullest extent its powers of perception in evaluating the witnesses, their testimony, and the best interest of the children. Id.
In determining whether a parent may relocate with a minor child, a circuit court must generally look to the principles set forth in our supreme court's decisions in Hollandsworth and Singletary . In Hollandsworth , the supreme court announced a presumption in favor of relocation for custodial parents with sole or primary custody, with the noncustodial parent having the burden to rebut this presumption. Hollandsworth , 353 Ark. at 485, 109 S.W.3d at 663. In Singletary , the court explained that the Hollandsworth presumption does not apply when the parents share joint custody of a child. Singletary , 2013 Ark. 506, at 8, 431 S.W.3d at 239-40. In a joint-custody arrangement where both parents share equal time with the child, there is not one parent-child relationship to take preference over the other, and the Hollandsworth rationale is inapplicable. Id. at 9, 431 S.W.3d at 240. The proper analysis for a change-in-custody request due to the relocation of one parent in a joint-custody situation is the same as that when relocation is not involved; the court must first determine whether a material change in circumstances has transpired since the divorce decree and then whether the change in custody is in the best interest of the child. Id.
Our supreme court recently addressed a situation similar to the case at bar in which the parties' custody agreement stated that the parties were to share "joint legal custody" but that appellee would have "primary physical custody of the minor child, subject to the reasonable and liberal visitation" of appellant. Cooper v. Kalkwarf , 2017 Ark. 331, at 1-2, 532 S.W.3d 58, 60. In that case, the parties shared basically a 60/40 custodial arrangement, and the circuit court applied the Hollandsworth presumption because the arrangement was not 50/50. The supreme court reversed the circuit court's order, holding that this case was not a Hollandsworth case but a Singletary case. The court recognized in the case that both parties shared the responsibility for making decisions for the child and that each parent had a significant and meaningful relationship with the child. Id. at 16, 532 S.W.3d at 68. And the court clarified the legal principles to apply in relocation cases:
We instead clarify that the Hollandsworth presumption should be applied only when the parent seeking to relocate is not just labeled the "primary" custodian in the divorce decree but also spends significantly more time with the child than the other parent. This standard preserves the rights of a primary custodian when he or she has shouldered the vast majority of the responsibility of caring for and making decisions
on behalf of the child, and it also more accurately reflects the best interest of the child, which is the polestar consideration in any custody decision. Stehle v. Zimmerebner , 375 Ark. 446, 291 S.W.3d 573 (2009).
As the General Assembly has recognized, joint-custody arrangements cannot be defined with mathematical precision. See Ark. Code Ann. § 9-13-101(a)(5) (Repl. 2015) (defining joint custody as the "approximate and reasonable equal division of time with the child by both parents...." (emphasis *233 added)). Thus, we do not attempt to oversimplify the issue of relocation by imposing an arbitrary percentage of time that a parent must spend with the child for the Singletary analysis to apply. Rather, by this opinion, we seek to recognize the realities of modern parenting and to emphasize that a joint-custody arrangement does not necessarily involve a precise "50/50" division of time. We further note that parental influence and commitment, involvement in the child's daily activities, and responsibility for making decisions on behalf of the child are important factors in the circuit court's consideration of the relocation issue. As the Bisbing court noted, recent social-science research has indicated that a close relationship with the parent of alternate residence is of critical importance to a child's well-being following a divorce. Bisbing [v. Bisbing , 230 N.J. 309, 166 A.3d 1155, 1166 (2017) ]. By limiting the Hollandsworth presumption to those situations where the child spends significantly less time with the alternate parent, the disruptive impact that a relocation would have on that relationship is minimized.
Id. at 15-16, 532 S.W.3d at 67-68.
With these standards in mind, we conclude that the circuit court's findings were clearly erroneous. The agreed order "granted joint custody of said minor child born to them with primary physical custody and custodial residence being awarded to [Rosenbaum][,]" which is ambiguous on its face. When a contract is ambiguous on its face, we resolve the ambiguity by looking at other parts of the contract and the parties' testimony about what they intended, as well as their conduct. Jones v. Jones , 2015 Ark. App. 468, at 10, 469 S.W.3d 402, 408. The circuit court failed to conduct this analysis in this case and instead found "[t]hat this case does not present the legal or factual situation of an existing true joint custody case because the parties had previously Ordered that primary physical custody of the minor child was vested with the Mother, who was also granted the sole right to determine the residence of the Child, all as set forth in this Court's prior Order of March 12, 2013." Because this finding is clearly in error based on precedent set forth herein, we reverse and remand for the circuit court to apply the Singletary and Cooper analyses.
Petition for rehearing granted; substituted opinion issued; reversed and remanded.
Abramson, Gladwin, Harrison, Klappenbach, Vaught, and Hixson, JJ., agree.
Whiteaker and Brown, JJ., dissent.

Because Rosenbaum was a minor when the paternity action was filed, Rosenbaum's mother was joined in the action and signed the agreed order as well.

Hollandsworth v. Knyzewski , 353 Ark. 470, 109 S.W.3d 653 (2003) ; Singletary v. Singletary , 2013 Ark. 506, 431 S.W.3d 234.