Cite as 2022 Ark. App. 442

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-21-529

| | | |
|---|---|---|
| DAN BAIRD | | **Opinion Delivered** November 2, 2022 |
| | APPELLANT | APPEAL FROM THE WHITE COUNTY CIRCUIT COURT [NO. 73DR-14-294] |
| V. | | |
| | | HONORABLE CRAIG HANNAH, JUDGE |
| CELINA BAIRD (NOW STELLY) | | |
| | APPELLEE | REVERSED AND REMANDED |

## KENNETH S. HIXSON, Judge

Appellant Dan Baird appeals from the White County Circuit Court's order granting appellee Celina Stelly's petition to relocate with the parties' minor children.[1] On appeal, Dan argues that the trial court erroneously applied the presumption in favor of relocation as

---

[1]After the record was filed in this case, Celina filed a motion to dismiss and a renewed motion to dismiss, arguing that this appeal should be dismissed because there was a lack of compliance with Ark. R. App. P.–Civ. 5(b)(1) when the trial court entered an order extending the time to file the record and also because the order being appealed was not a final, appealable order. After the parties filed their briefs but before submission of the case, we entered an order denying Celina's motion to dismiss and renewed motion to dismiss. In Celina's appellate brief, she repeats these jurisdictional challenges and states that she included these arguments in her brief because, as of the date of the filing of her brief, we had not yet ruled on her previously filed motions to dismiss. As stated, since the filing of her brief, we have denied her motions to dismiss. Having previously considered these issues and concluded that we have jurisdiction to hear this appeal, we decline to address the jurisdictional arguments that are being repeated in Celina's brief.

set out in *Hollandsworth v. Knyzewski*, 353 Ark. 470, 109 S.W.3d 653 (2003), and that the trial court instead should have applied the analysis set forth in *Singletary v. Singletary*, 2013 Ark. 506, 431 S.W.3d 234. We agree, and we reverse and remand.

## I. *Background*

The parties were divorced on April 8, 2015, at which time the parties had four minor children who were between the ages of three and seven years old. The divorce decree awarded the parties "joint legal custody of the children to facilitate shared parenting." The decree provided that the parties "shall attempt to consult with one another concerning the health, welfare, education, and activities of the minor children" and that if the parties "are unable to reach an agreement concerning a child, [Celina's] decision shall be determinative." Celina was awarded "physical custody and primary care of the children" subject to Dan's visitation rights. During school months, Dan's visitation was on alternate weeks from after school on Wednesday until Sunday at 5:00 p.m. in addition to one overnight visit following his weekend visitation. The divorce decree provided that Celina and Dan would share equally in holiday visitation and would alternate weeks in the summer. Dan was ordered to pay weekly child support of $231.81 based on his weekly income as applied to the family support chart. Each party was entitled to claim two of the four children as tax dependents.

On December 14, 2016, an agreed order was filed that modified the visitation schedule and reduced Dan's child support. The agreed order provided that "[c]ustody shall remain as joint legal custody with [Celina] having primary physical custody and primary care of the children subject to [Dan's] rights for timesharing" as set forth in the order. The agreed

2

order provided that, during school months, Dan's visitation was on alternate weeks from after school on Wednesday until return to school on Monday. If school was not in session on Monday, Dan could keep the children until 6:00 p.m. that day. The one overnight visit following Dan's weekend visitation was terminated. The parties agreed that Dan's weekly child support would be reduced from $231.81 to $179.10 and that this "deviation is based on . . . consideration of the fact that [Dan] will have the children 5 of every 14 days." The agreed order provided that other issues relating to the children in the divorce decree remained unchanged, including the equal division of time on holidays and during the summer as well as each party's right to claim two of the four children as tax dependents. The agreed order contained the following provision with respect to relocation:

> The parties acknowledge that neither can be a fully engaged parent who is actively committed to participating in their children's lives if the distance between their places of residence is too great. To that end, the parties agree that absent a written agreement between the parties approved by this court or an order of this court, neither party shall relocate to any location such that the children cannot remain in the Searcy School District[.]

The agreed order also states that "it is the goal of the parties to [e]nsure that both parents remain able to actively participate in their children's lives."

On October 2, 2020, Celina filed a motion to relocate with the children to Dallas, Texas.[2] In the motion, Celina stated that she had remarried and that her husband had accepted a new job in Dallas earning significantly more money. Celina, who is a licensed

---

[2]Although the record contains various other motions filed by the parties since entry of the December 14, 2016 order, the only motion relevant to this appeal is Celina's motion to relocate.

therapist, also stated that there are numerous job openings in the Dallas area for which she qualifies. Celina stated that her sister lives in Dallas and that she and the children had frequently visited her sister and are familiar with the area. Celina asserted that the school district where the children would attend school is widely considered one of the best school districts in Texas. Celina alleged that a relocation to Texas was in the children's best interest, and she asked the trial court to enter an order permitting her to relocate and modifying Dan's visitation schedule accordingly. Dan filed a response to Celina's motion to relocate, asking that it be denied.

The trial court requested pretrial briefs from the parties on the issue of whether Celina's petition to relocate should be decided on the principles set forth in *Hollandsworth v. Knyzewski*, 353 Ark. 470, 109 S.W.3d 653 (2003), or *Singletary v. Singletary*, 2013 Ark. 506, 431 S.W.3d 234. The parties submitted pretrial briefs on February 26, 2021. In Celina's brief she argued that the *Hollandsworth* standard should apply; conversely, Dan argued in his brief that the *Singletary* standard should apply.

The bench trial was held on March 5, 2021. Dan testified that he lives in Searcy and has remarried and that he and his current wife have a two-year-old daughter together. Dan is employed as a consultant under a U.S. Department of Defense contract at the Little Rock Air Force Base. Dan testified that the child-custody arrangement with Celina was "about a 60/40 split," and he agreed that if there is a disagreement between them, Celina "[is] the tiebreaker." Dan stated that he and Celina are "equal co-parents" and that they "definitely communicate" with respect to the children and exchange text messages on most days.

4

Dan testified that he has always been involved in his children's lives. He stated that he and his current wife have a good relationship with his children and that they provide stability and consistency for the children. Dan thought that the children would be "devastated" if Celina was allowed to relocate to Texas and the children were able to see him only once a month.

Dan's wife, Genevieve Baird, testified that she has a good relationship with Dan's children and that the children are closely bonded with their two-year-old half sister. Genevieve stated that Dan is a good father and that he has a close relationship with his children.

Celina testified that she lives in Searcy and that her husband lives in Dallas. Celina's husband recently accepted a job there as a supervisor for a flooring business, and he currently lives with Celina's sister. Celina stated that her husband is earning more money at his new job in Dallas than he was making in Searcy, and she indicated that there were job opportunities in the Dallas area for her as well.

Celina testified that she has always been the children's primary caretaker. She acknowledged that it is good for the children to have a relationship with their father. Celina, however, stated that "I have done everything in my power to co-parent peacefully and Dan has made it impossible." Celina thought that a relocation to Dallas would provide the children consistency and more opportunities and would also allow the family to benefit financially.

Celina's husband, Justin Stelly, testified about his new job and stated that he would like to continue to live in Dallas. He stated that it had been a "huge strain to be away from [his] family" and that he wanted them to relocate there.

At the conclusion of the bench trial, the trial court entered an "Order to Review [Celina's] Motion to Relocate using *Hollandsworth* and Findings of Facts and Law" and took the case under advisement. In that order, the trial court made these findings:

> The Court makes the following findings of fact and conclusions of law in its decision regarding whether to analyze the Motion to Relocate using *Singletary* or *Hollandsworth*:
>
> a) To determine the custody arrangement agreed upon between the parties, the court should look at the language of the contract itself. *Singletary*, 431 S.W.3d at 241. Where language is ambiguous, the court may look at other parts of the contract and outside of the contract to determine the intent of the parties. *Id*. at 240. In *Singletary*, the parties' decree stated "the parties shall have joint custody of the minor child with Appellant having primary custody." *Id* at 241.
>
> b) The Court has reviewed the Agreed Order in the case at hand. The Order states in Paragraph One that the parties have "joint legal custody with [Celina] having primary custody and primary care of the children subject to [Dan's] rights for timesharing." The Court finds this language is not as ambiguous as the language used in *Singletary* and evidences the parties' intent that [Celina] should have superior authority related to care and custody of the children, subject to [Dan's] "rights for timesharing." However, the Court notes this language alone could be considered ambiguous. Therefore, the Court has not relied on this language alone to determine the parties' intent as to custody and has looked to other portions of the Agreed Order to make this determination.
>
> c) The Agreed Order specifically refers to [Celina] as "custodial parent" in Paragraph 5(h).
>
> d) The Agreed Order grants [Celina], as primary custodian, primary decision-making rights for the children in the event the parties are unable to reach an agreement in Paragraph 5(i).

6

e) Unlike *Singletary*, the parties herein do not share equal time with the children. The children are in [Celina's] care over sixty percent (60%) of the time during the school year and [Dan] is required to pay support to [Celina] for the children.

f) The Court finds that the language in Paragraph 2 of the Agreed Order related to relocation does not provide language sufficient to indicate the parties intended to share true joint custody, but rather the parties' intent not to disrupt the visitation schedule absent written agreement or future orders of the Court.

g) In *Hollandsworth*, the court held a "presumption exists in favor of relocation for a custodial parent with primary custody, with the burden being on the noncustodial parent to rebut the relocation presumption." *Hollandsworth*, 109 S.W.3d at 663.

h) Having found that the language of the parties' Agreed Order clearly shows an intent to designate [Celina] as custodial parent, this Court will analyze her request to relocate under *Hollandsworth*.

About a month later, on April 13, 2021, the trial court entered an "Order Granting Relocation." The trial court found:

> The last Order entered in this matter was an Agreed Order filed December 14, 2016. The Court finds this Order clearly shows an intent to designate [Celina] as the custodial parent, subject to [Dan's] right to timesharing with the children. The Court has previously ruled that a presumption exists in favor of [Celina's] request to relocate as she is the custodial parent. [Dan], as the noncustodial parent, has the burden to rebut that presumption. The Court finds that the presumption in favor of [Celina] has not been rebutted, and the Court grants [Celina's] Motion to Relocate.

The trial court reduced Dan's visitation with the children to one weekend a month during the school year, while increasing his summer visitation. Dan appealed.

## II. *Discussion*

7

In this appeal, Dan argues that the trial court erred in applying the *Hollandsworth* presumption in favor of relocation and instead should have applied the *Singletary* analysis. For the following reasons, we agree with Dan's argument.

We review domestic-relations cases de novo on the record, and we will not reverse the trial court's findings unless they are clearly erroneous. *Hunter v. Haunert*, 101 Ark. App. 93, 270 S.W.3d 339 (2007). A trial court's finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire record is left with a definite and firm conviction that a mistake has been made. *Id.* We give due deference to the superior position of the trial court to view and judge the credibility of the witnesses. *Id.* This deference is even greater in cases involving children, as a heavier burden is placed on the judge to utilize to the fullest extent his or her powers of perception in evaluating the witnesses, their testimony, and the best interest of the children. *Id.*

In determining whether a parent may relocate with a minor child, the trial court must generally look to the principles set forth in the supreme court's decisions in *Hollandsworth*, 353 Ark. 470, 109 S.W.3d 653 (2003), and *Singletary*, 2013 Ark. 506, 431 S.W.3d 234. In 2003, the *Hollandsworth* court announced a presumption in favor of relocation for custodial parents with sole or primary custody, with the noncustodial parent having the burden to rebut this presumption. Ten years later, in *Singletary*, the supreme court explained that the *Hollandsworth* presumption does not apply when the parents share joint custody of a child. In a joint-custody arrangement where both parents share equal time with the children, there is not one parent-child relationship to take preference over the other, and the *Hollandsworth*

8

rationale is inapplicable. *Singletary*, *supra*. Instead, the proper analysis in a change-in-custody request due to the relocation of one parent in a joint-custody situation is the same as that when relocation is not involved; the court must first determine whether a material change in circumstances has transpired since the divorce decree or last order of custody and then whether the change in custody is in the best interest of the child. *Id.*

Recognizing the significant impact of the *Hollandsworth* presumption and the considerable burden of overcoming that presumption in relocation cases, the supreme court revised and clarified the *Hollandsworth* versus *Singletary* analysis in *Cooper v. Kalkwarf*, 2017 Ark. 331, 532 S.W.3d 58. Generally, prior to *Cooper*, if the custody was "primary," then the *Hollandsworth* analysis entitled the custodial parent to a rebuttable presumption in favor of relocation. However, if the custody was "joint," then a *Singletary* analysis required the traditional proof of material change of circumstances and proof of best interest of the child. However, prior to *Cooper*, there was little guidance as to what constituted "joint custody." Did one review only the custody verbiage contained in the decree? Did joint custody require a 50/50 time split? Was it something less? Could the court consider other factors? To make things more complicated, the trial courts were being supportive in approving flexible joint-custody arrangements proposed by the parties. The *Cooper* court acknowledged this evolution in custody arrangements:

> Since *Hollandsworth* was decided in 2003, the typical postdivorce custodial arrangement has evolved from a traditional custody situation, where one parent receives sole or primary custody and the noncustodial parent receives weekend visitation, to a shared-custody situation. This evolution is reflected in the 2013 amendment to our custody statute, Ark. Code Ann. § 9-13-101(a)(1)(A)(iii), which

9

provides that awards of joint custody are now favored in Arkansas. *See* Act of April 11, 2013, No. 1156 §§ 1–3, 2013 Ark. Acts 4706–07.

*Cooper*, 2017 Ark. 331, at 14, 532 S.W.3d at 66–67.

To that end, in *Cooper*, the decree awarded "joint legal custody" to both parents but further provided that the appellee had "primary physical custody." The appellee subsequently filed a petition to relocate to Texas, and the appellant filed an answer asking the court to deny the petition. At the hearing, the evidence showed that over a two-week period, the child was with the appellant six days and with appellee eight days. By strict mathematics, this arrangement calculates to 42.9 percent with appellant and 57.1 percent with appellee. However, the trial court noted that when it considered all the evidence presented and added in spring breaks, holidays, and summer visitation, the appellant had some form of contact with the child on at least 60 percent of the days in the year.

At the conclusion of the hearing, the trial court in *Cooper* expressed its frustration with the state of the relocation law and stated in its order: "The Court notes that the area of relocation law is not clear, and there appears to be no bright line test to when *Hollandsworth* applies or when *Singletary* [applies]." *Cooper*, 2017 Ark. 331, at 9, 532 S.W.3d at 64. The trial court observed that the division of time was clearly not 50/50, that the appellee was awarded primary physical custody in the decree, and that "[g]iven the [a]greement in its entirety, the intent of the parties, and the conduct of the parties the Court finds that the parties did not enjoy true joint custody." *Id.* at 9, 532 S.W.3d at 63. Despite *Cooper* ostensibly being a joint-custody case and accordingly subject to a *Singletary* analysis,

10

considering these determinations, the trial court in *Cooper* found that the appellee was entitled to the *Hollandsworth* presumption in favor of relocation and granted the appellee's petition to relocate.

On appeal to the supreme court, the appellant in *Cooper* argued that, despite the fact that he had custody on only six of fourteen days, he was still entitled to the application of *Singletary* because he, in fact, enjoyed joint custody. Appellant argued that the trial court erred in applying the *Hollandsworth* presumption under the facts of the case. After careful consideration, the supreme court in *Cooper* agreed and reversed and remanded the case. It is clear from the *Cooper* opinion that the supreme court appreciated the trial court's frustration in parental-relocation cases and thoughtfully modified the *Hollandsworth* presumption. The supreme court in *Cooper* wrote:

> [I]t is often a difference of only one or two small details that persuades a court to utilize either the *Hollandsworth* or the *Singletary* analysis, and thus, these small factual distinctions can ultimately change the outcome of the court's decision. Other state courts have grappled with this issue as well, and the recent trend has been to impose a best-interests test in all cases when considering a relocation application, regardless of whether that parent is designated as the primary custodian or whether the parties equally share custody. *See Bisbing v. Bisbing*, 166 A.3d 1155 (N.J. 2017) (noting that the majority of states, either by statute or by case law, now impose a best-interests test rather than a preference or presumption in favor of a primary custodian).

> Despite this trend, we choose not to eliminate entirely the presumption in favor of a sole or primary custodian that was announced in *Hollandsworth*, *supra*, because the rationale supporting that decision remains persuasive in certain situations, such as in a traditional custody arrangement. Accordingly, we specifically reject the one-size-fits-all suggestion made by the circuit court in paragraph 56 of its order cited above. We instead clarify that the *Hollandsworth* presumption should be applied only when the parent seeking to relocate is not just labeled the "primary" custodian in the divorce decree *but also spends significantly more time with the child* than the other parent. This standard preserves the rights of a primary custodian when he

11

or she has shouldered the vast majority of the responsibility of caring for and making decisions on behalf of the child, and it also more accurately reflects the best interest of the child, which is the polestar consideration in any custody decision. *Stehle v. Zimmerebner*, 375 Ark. 446, 291 S.W.3d 573 (2009).

As the General Assembly has recognized, joint-custody arrangements cannot be defined with mathematical precision. *See* Ark. Code Ann. § 9-13-101(a)(5) (Repl. 2015) (defining joint custody as the "*approximate and reasonable equal division of time with the child by both parents. . . .*" (emphasis added)). Thus, we do not attempt to oversimplify the issue of relocation by imposing an arbitrary percentage of time that a parent must spend with the child for the *Singletary* analysis to apply. Rather, by this opinion, we seek to recognize the realities of modern parenting and to emphasize that a joint-custody arrangement does not necessarily involve a precise "50/50" division of time. We further note that parental influence and commitment, involvement in the child's daily activities, and responsibility for making decision on behalf of the child are important factors in the circuit court's consideration of the relocation issue. As the *Bisbing* court noted, recent social-science research has indicated that a close relationship with the parent of alternate residence is of critical importance to a child's well-being following a divorce. *Bisbing*, 166 A.3d at 1166. By limiting the *Hollandsworth* presumption to those situations where the child spends significantly less time with the alternate parent, the disruptive impact that a relocation would have on that relationship is minimized.

*Cooper*, 2017 Ark. 331, at 14–16, 532 S.W.3d at 67–68.

It is important to note that the *Cooper* court acknowledged that even the General Assembly recognized that joint-custody arrangements cannot be defined with mathematical precision in promulgating Ark. Code Ann. § 9-13-101(a)(5) (Repl. 2015) (defining joint custody as the "*approximate and reasonable equal division of time* with the child by both parents. . . ." (emphasis added)). In reversing the trial court's application of the *Hollandsworth* presumption, the *Cooper* court held that "[u]nder the *revised test* discussed above, we conclude that the analysis set forth in *Singletary*, *supra*, governs appellee's relocation petition rather than *Hollandsworth*, *supra*." *Id*. at 16, 532 S.W.3d at 68 (emphasis added).

12

Perhaps not perfect, but now we have a better standard to determine whether *Hollandsworth* or *Singletary* applies in relocation cases. In such cases, *Cooper* requires the trial court not to look only to the custody label in the decree or to strict mathematical precision, but the court must determine whether one parent spends significantly more time with the child than the other parent. How do we determine that "significantly more time" standard? We are left with the imprecise exercise of comparing and analogizing *Cooper*. In *Cooper*, the strict mathematical precision set forth in the decree was that the appellant spent 42.9 percent with the child and the appellee spent 57.1 percent with the child. Further, the supreme court in *Cooper* stated that "[h]ere, both parties shared the responsibility for making decisions on [the child's] behalf, and each parent has a significant and meaningful relationship with the child." *Cooper*, 2017 Ark. 331, at 16, 532 S.W.3d at 68. In light of these factors, the supreme court in *Cooper* disagreed with the trial court and held that the parties did enjoy a joint-custody relationship and that the appellee was not entitled to the *Hollandsworth* presumption.

Turning to the case at bar, we find that *Cooper* is dispositive of the issues herein. Applying the test set forth by the supreme court in *Cooper*, we hold under the facts of this case that the trial court erroneously applied the *Hollandsworth* standard and instead should have applied *Singletary*. In the December 14, 2016 agreed order, which was the most recent custody order before Celina filed her motion to relocate, the parties agreed to reduce Dan's child-support obligation due to "consideration of the fact that [Dan] will have the children 5 of every 14 days" during the school months. The agreed order further provided that Celina

13

and Dan would share equal time with the children during holidays and the summer. The agreed order also stated that "it is the goal of the parties to [e]nsure that both parents remain able to actively participate in their children's lives."

Although the custody arrangement herein provided for "joint legal custody with Celina having primary physical custody and primary care of the children,"[3] the *Hollandsworth* presumption should be applied only when the parent seeking to relocate is not just labeled the primary custodian in the most recent custody order but also spends significantly more time with the child than the other parent. *See Cooper, supra.* Here, the parties' custody arrangement was not an every-other-weekend scenario but rather resulted in an approximate 60/40 split. While Dan contends that the overall custody split was 60/40, Celina argues that it was 63/37. Regardless of the mathematical precision, the parties' custody split was *approximately* 60/40. This split in custody compares favorably with the facts in *Cooper* and with the verbiage in Ark. Code Ann. § 9-13-101(a)(5), wherein joint custody is defined as "approximate and reasonable equal division of time with the child." Further, when one factors in the summer visitation and holiday visitation, which is 50/50, the time Dan spends

---

[3]We observe that in *Singletary*, the supreme court held that the use of the terms "joint custody" along with "primary custody" was ambiguous on its face. Moreover, in *Cooper*, the supreme court held that it was unclear from the language in the decree whether the parties had "joint custody" such that the *Singletary* analysis would apply—where the decree stated that the parties are to share joint legal custody but the appellee is the primary physical custodian, and the decree then awarded appellant nearly equal time with the child—and therefore the trial court was correct in reviewing the parties' subsequent statements and conduct. In the present case, the language in the most recent custody order is similarly unclear as to whether the parties had "joint custody," and it is therefore proper to review the parties' subsequent statements and conduct.

14

with the children increases proportionally from an annual perspective. The record also reflects that Dan is significantly involved in the children's lives, shares co-parenting responsibilities, and has a significant and meaningful relationship with the children. The supreme court in *Cooper* stated that application of the *Hollandsworth* presumption is only appropriate in cases where it "preserves the rights of a primary custodian when he or she has shouldered the *vast majority of the responsibility* of caring for and making decisions on behalf of the child." *Cooper*, 2017 Ark. 331, at 15, 532 S.W.3d at 67 (emphasis added). Such is not the case here. The record instead shows that, in addition to enjoying significant time with the children, Dan also shares a significant responsibility for his children's care and custody. Under the revised test set forth by the supreme court in *Cooper*, we conclude that the trial court clearly erred in applying the *Hollandworth* presumption under these facts.

For the foregoing reasons, we hold that the *Singletary* analysis governs Celina's relocation petition and that the trial court erred in applying *Hollandsworth*. Accordingly, we reverse the trial court's decision and remand for the court to apply the *Singletary* analysis to the facts in this case.[4]

Reversed and remanded.

GLADWIN and KLAPPENBACH, JJ., agree.

---

[4]Celina argues in her brief that, even if we hold that the *Hollandsworth* presumption is inapplicable, this court should nonetheless affirm because there was a material change in circumstances and the move was in the children's best interest. However, the trial court made no such findings, and this court will not make them in the first instance. *See Cooper*, *supra* (reversing the trial court's application of *Hollandsworth* and remanding for the trial court to apply *Singletary* to the facts of the case).

15

*Lightle, Raney & Streit, LLP*, by: *Susannah Raney Streit*, for appellant.

*Brett D. Watson, Attorney at Law, PLLC*, by: *Brett D. Watson*, for appellee.