Cite as 2025 Ark. App. 142

# ARKANSAS COURT OF APPEALS
DIVISION IV
No. CV-23-672

| | | |
|---|---|---|
| MALISSA DAVIS | | Opinion Delivered March 5, 2025 |
| | APPELLANT | |
| | | APPEAL FROM THE LONOKE COUNTY CIRCUIT COURT |
| V. | | [NO. 43DR-17-930] |
| | | |
| JERRED VONDRAN | | HONORABLE JASON ASHLEY |
| | APPELLEE | PARKER, JUDGE |
| | | |
| | | AFFIRMED |

## ROBERT J. GLADWIN, Judge

This is an appeal from the Lonoke County Circuit Court's amended order denying appellant Malissa Davis's (Malissa's) petition to relocate with the parties' minor child ("MC") and awarding joint custody of MC to Malissa and appellee Jerred Vondran (Jerred). On appeal, Malissa argues that the circuit court erred by failing to apply the presumption in favor of relocation for the primary custodial parent as outlined in *Hollandsworth v. Knyzewski*, 353 Ark. 470, 109 S.W.3d 653 (2003), and erred in finding that a material change in circumstances justified modification of custody. Malissa also contends that the circuit court erred in granting Jerred attorney's fees. We affirm.

### I. *Background Facts*

On November 8, 2018, the circuit court entered an agreed order in the paternity case between Malissa and Jerred. The parties agreed to the terms of the order after a successful

mediation. The order adjudicated Jerred MC's biological father and awarded custody and visitation. Malissa was designated the "primary custodial parent" subject to Jerred's reasonable visitation. Jerred was awarded visitation from Monday at 5:30 p.m. until Thursday at 3:00 p.m. each week based on Malissa's work schedule. The order stated, "Should Malissa's work schedule change, the parents shall work together to create a new schedule with the understanding that Jerred will have the same amount of time he currently enjoys with the minor child for his visitation schedule." Furthermore, the parties were to keep the same rules and schedules regarding MC; were to work together to ensure they were in agreement and following the same general rules and guidelines; and MC was to attend Ward Elementary School and to continue in the Cabot School District. Both parties were to be placed on all forms as mother and father and have equal access to information regarding MC (medical, educational, or extracurricular). The parties also agreed to notify the other of any medical issues regarding MC, and both were entitled to authorize emergency medical treatment. The order, however, makes no mention as to which party had more authority to make decisions for MC or which party had the final say in the event the parties disagreed as to any decision regarding MC.

On January 27, 2022, Malissa filed a petition requesting to relocate with MC to Bentonville, Arkansas. In the petition, Malissa stated that she was a traveling nurse and had been offered—and had accepted—a stable and permanent full-time position at a healthcare facility in Northwest Arkansas. She claimed that the promotion would greatly enhance the quality of life for MC and that she had already secured housing in Bentonville. On February

28, 2022, Jerred filed a response to the petition to relocate denying that relocation was in MC's best interest. Jerred also filed a counterclaim for sole custody, citing parental alienation as a material change in circumstances. On May 24, 2022, the circuit court entered an order appointing an attorney ad litem for MC's best interest.

On March 13, 2023, the circuit court held a hearing on the competing motions. Malissa testified first at the hearing. Malissa testified that she is a registered respiratory therapist, and when the agreed order was entered, she worked three nights a week on twelve-hour shifts. Jerred had MC during the week. When Malissa's work schedule changed during the COVID pandemic, she and Jerred worked together to find another suitable visitation arrangement for MC. In October 2021, Malissa's contract work involved time in Northwest Arkansas at Mercy Hospital in Rogers. Malissa extended her contract work with Mercy Hospital but in Joplin, Missouri. Malissa testified that when she worked at Mercy-Rogers, Jerred began taking MC every weekend and dropping MC off at school on Monday mornings.

Malissa has three children, including MC. Her oldest daughter is already attending a high school in Bentonville and currently lives with a family that works for the Bentonville School District. Malissa's middle child attends Arkansas Virtual Academy. Malissa is still a contract therapist at Mercy Hospital in Joplin, but with the promotion, she is an interim clinical coordinator for the respiratory-therapy department, which is a management position. Malissa testified that her new position pays her approximately $40,000 more a year. In her new position, Malissa works every third weekend of the month, and for the rest of the month,

she works three nights of the week. She works from 5:30 p.m. until 6:00 a.m. on the nights that she works. Malissa testified that she has several people who could stay with the kids on the nights that she works if needed. She also mentioned that her oldest daughter is about to be sixteen, and she would also hire someone to stay with the children while she was at work.

Malissa was questioned regarding several tardies that MC had received in school, and she testified that many mornings MC will wake up with "coughing fits" because he has a history of asthma. She also testified that her father has some health issues that put her behind schedule some mornings, and MC was tardy as a result. Because of the tardies, Malissa had to meet with a truancy officer. Jerred did not attend the meeting. Malissa stated that she takes MC to doctor appointments, to the dentist, and to receive his immunizations. Malissa testified that there have been times when Jerred has not been able to exercise his visitation because of work, but she always allows him to make up the time with MC. She testified that there was approximately one month around June 2020 that Jerred did not see MC because of work. MC spent that time with either Jerred's mother or his sister. Malissa recalled one instance when she did not allow MC to leave with Jerred because he "reeked of cigarette smoke," and MC has asthma. Malissa stated that if the court denied her request to relocate, she would not move to Bentonville.

On cross-examination, Malissa testified that she is still a contract worker and is not tied to any particular location. She acknowledged that the locations she applied to work included Tennessee; Missouri; El Dorado, Arkansas; Mississippi; Harrison, Arkansas; and

4

Oklahoma. She testified that the only job she applied for in central Arkansas was in Searcy. At the time of the hearing, Malissa could not state with assurance what school MC would attend if she were to relocate to Bentonville. She stated that she had applied for MC to attend Arkansas Arts Academy and tried to inform Jerred of this, but he "said very ugly things"; therefore, she stopped communicating with him. MC's admitted school records showed that he had eighteen unexcused absences in pre-K in the 2021–2022 school year and, at the time of the hearing, had thirteen unexcused absences and sixteen tardies for the current school year. Records for Malissa's middle child showed a substantial number of absences and tardies from 2018 through 2021. Malissa acknowledged that she does not have any family in Northwest Arkansas. When asked if she wanted to reduce Jerred's visitation and access to MC, Malissa responded "okay." Malissa also acknowledged that Jerred did not get MC on Christmas Day in 2022 as agreed because she woke up late that day.

Jerred was the next to testify at the hearing. He stated that he lives in Cabot and that his cousin also resides with him and has done so for approximately five years. Jerred is employed in Brinkley at Alaska Aviation. He testified that he had been unaware of MC's absences and tardies until he received the truancy letter from the school. Jerred said that he did not attend the truancy meeting because he did not open the letter until the day after the meeting was scheduled. He said that he believed Malissa was very angry with him and that if she had her way, he would not be involved in MC's life. Jerred testified that he does not attend wellness visits with MC. He acknowledged that he is a smoker but only smokes in his garage and never around MC. Jerred stated that if the court were to reduce his time with

MC to every other weekend, he would want MC for the entire summer. He testified that in October 2021—after Malissa was "let go" from Baptist—their visitation schedule was disrupted due to Malissa's schedule, which also caused problems with Jerred's work schedule. Jerred said that his visitation with MC has been based on Malissa's work schedule. He said that having a set schedule for visitation is extremely beneficial. Jerred testified that none of MC's tardies occurred when MC was with him, but two or three of the absences were when MC was with him, and MC was sick. Jerred expressed concern with Malissa's pattern of not getting her children to school on time and their excessive absences. He also expressed that he wanted his and Malissa's communication to improve and that before she filed the petition to relocate, they were able to communicate "a lot better." Jerred said he does not feel hostile toward Malissa, but when she told him she wanted to relocate with MC, he begged her not to. He testified that Malissa does not tell him when MC has medical appointments. Jerred explained that their initial agreed custody order was framed the way it was so that MC would never have to be left overnight with someone other than himself or Malissa. He believed that he could provide MC more stability and wanted sole custody.

The court also heard testimony from Jerred's brother, Kevin Vondran; his mother, Becky Vondran; his sister, Bethany Vondran; and his cousin, Josh Mitchel. Jerred's family all testified that he has a great relationship with MC, he is a loving father, and MC shares a close bond with Jerred's family members in central Arkansas.

Finally, the court heard the recommendations of the attorney ad litem. He stated that MC is dearly loved by both his parents and opined that it is in MC's best interest to

6

spend equal—or as close to equal—time with both Jerred and Malissa. The ad litem noted that the school absences were concerning, and he hoped that the court would put some "kind of cap" on those because the current number was "exorbitant." He also stated that while there had been some communication issues between Malissa and Jerred, he was of the opinion that it does not rise to the level of a complete breakdown in co-parenting that would make joint custody unfeasible.

On June 21 2023, the circuit court entered an order regarding custody and Malissa's request for relocation. Subsequently, the circuit court amended its order. The court found that Malissa and Jerred had been exercising almost equal time with MC and that Jerred is involved and participates in school and doctor appointments. Thus, the circuit court held that the relocation request was controlled by *Singletary v. Singletary*, 2013 Ark. 506, 431 S.W.3d 234, and *Cooper v. Kalkwarf*, 2017 Ark. 331, 532 S.W.3d 58, rather than *Hollandsworth*, *supra*. Even so, the court acknowledged that under a *Hollandsworth* analysis, Jerred rebutted the presumption in favor of relocation because the only benefit to the relocation was that Malissa would earn a higher income. Accordingly, the court denied Malissa's petition to relocate with MC. Furthermore, the court found a material change in circumstances justifying a modification in custody—specifically, MC's many tardies and absences from school, Malissa's engaging in acts of parental alienation, and the lack of communication between the parties. As a result, the circuit court modified custody to true joint legal and physical custody subject to other provisions.

7

On June 20, 2023, Jerred filed a motion requesting attorney's fees in the amount of $11,055, and the circuit court awarded fees to Jerred in the amount of $4,000. Malissa filed a timely notice of appeal on July 12, 2023, and an amended notice of appeal from the court's order granting attorney's fees. This appeal followed.

II. *Standard of Review*

In reviewing child-custody cases, we consider the evidence de novo, but we will not reverse the circuit court's findings unless they are clearly erroneous or clearly against the preponderance of the evidence. *See McNutt v. Yates*, 2013 Ark. 427, 430 S.W.3d 91. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been made. *See Boudreau v. Pierce*, 2011 Ark. App. 457, 384 S.W.3d 664. It is well settled that the primary consideration is the welfare and best interest of the child, while other considerations are merely secondary. *See McNutt*, 2013 Ark. 427, at 8, 430 S.W.3d at 97. We give special deference to the superior position of the circuit court to evaluate and judge the credibility of the witnesses in child-custody cases, and this deference to the circuit court is even greater in cases involving child custody because a heavier burden is placed on the circuit court to utilize to the fullest extent its powers of perception in evaluating the witnesses, their testimony, and the best interest of the children. *Id.*

III. *Points on Appeal*

On appeal, Malissa argues the following: (1) the circuit court erred in disregarding the parties' agreed order for sole—not joint—custody; (2) the circuit court erred in concluding

8

there was a material change in circumstances to justify a custody modification; (3) the circuit court erred in awarding joint custody when the parties cannot cooperate for the best interest of MC; and (4) the circuit court erred in granting Jerred's motion for attorney's fees.

IV. *Discussion*

A. Relocation

In determining whether a parent may relocate with a minor child, a circuit court must generally look to the principles set forth in *Hollandsworth*, 353 Ark. 470, 109 S.W.3d 653. In that case, our supreme court pronounced a presumption in favor of relocation for custodial parents with sole or primary custody; the noncustodial parent was given the burden of rebutting the presumption. *Id.* at 485, 109 S.W.3d at 663. The *Hollandsworth* presumption should be applied only when the parent seeking to relocate is not only designated the "primary" custodian in the divorce decree but also spends significantly more time with the child than the other parent. *Cooper*, 2017 Ark. 331, at 15, 532 S.W.3d at 67. In *Singletary*, *supra*, our supreme court clarified that the *Hollandsworth* presumption does not apply when the parents share joint custody of a child. *Singletary*, 2013 Ark. 506, at 8, 431 S.W.3d at 239; *see also Cooper*, 2017 Ark. 331, at 11, 532 S.W.3d at 65. Rather, the *Singletary* court recognized that the proper analysis for a court facing a change-in-custody request due to relocation of one parent when the parents have joint custody was announced in *Lewellyn v. Lewellyn*, 351 Ark. 346, 93 S.W.3d 681 (2002), and is essentially the same as a change-in-

9

custody analysis when relocation is not involved. *Singletary*, 2013 Ark. 506, at 9, 431 S.W.3d at 240.

Generally, courts impose more stringent standards for custody modifications than they do for initial determinations of custody. *See, e.g.*, *Evans v. McKinney*, 2014 Ark. App. 440, 440 S.W.3d 357. The reason for requiring more stringent standards is to promote stability and continuity in the life of the child and to discourage repeated litigation of the same issues. *Id.* The party seeking modification of the custody order has the burden of showing a material change in circumstances. *Id.* In order to change custody, the circuit court must first determine that a material change in circumstances has occurred since the last order of custody; if that threshold requirement is met, it must then determine who should have custody, with the sole consideration being the best interest of the children. *Id.*

Recognizing the significant effect of the *Hollandsworth* presumption and the considerable burden of overcoming that presumption in relocation cases, the supreme court revised the *Hollandsworth* versus *Singletary* analysis in *Cooper*. The *Cooper* court clarified that the *Hollandsworth* presumption should be applied only when the parent seeking to relocate is not just designated the "primary custodian" in the custody order but also spends significantly more time with the child than the other parent. *Cooper*, 2017 Ark. 331, at 15, 532 S.W.3d at 67. This standard preserves the rights of a primary custodian when he or she has shouldered the vast majority of the responsibility of caring for and making decisions on behalf of the child, and it also more accurately reflects the best interest of the child, which is the polestar consideration in any custody decision. *Id.* However, in a true joint-custody

arrangement, both parents share equal time with and custody of the child; therefore, there is not one child-parent relationship to take preference over the other. The rationale of the *Hollandsworth* relocation presumption simply does not apply to a parent who has joint custody and desires to relocate. Our supreme court explained, "We do not retreat from the relocation presumption announced in *Hollandsworth*, but clarify that it is not applicable when the divorcing parents have joint custody of their children." *Singletary*, 2013 Ark. 506, at 8–9, 431 S.W.3d at 240.

Here, Malissa argues that the court improperly applied *Singletary* and *Cooper*, and if it had properly applied *Hollandsworth*, the circuit court would have granted her motion for relocation because Jerred failed to rebut the presumption in favor of relocation for custodial parents with primary custody. We disagree. The agreed custody order designated Malissa as the "primary custodial parent" but provided that Jerred have visitation with MC 3 days a week—which is approximately 156 days a year—and he had been exercising his visitation consistently over the last year and a half. The custody order also found that both parties had full and free access to all matters pertaining to MC; that the parties must notify each other of any medical issues regarding MC; that each parent is entitled to authorize emergency medical treatment; and that each party was responsible for one-half of any health-related expenses. The order made no mention as to which party had more authority to make decisions for MC or which party had the final say in decisions in the event the parties disagreed.

Furthermore, Malissa's argument that 42 percent of the time that Jerred spent with MC does not equate to "equal time" lacks merit. In *Baird v. Baird*, this court held as follows:

[W]e seek to recognize the realities of modern parenting and to emphasize that a joint-custody arrangement does not necessarily involve a precise "50/50" division of time. We further note that parental influence and commitment, involvement in the child's daily activities, and responsibility for making decision on behalf of the child are important factors in the circuit court's consideration of the relocation issue. . . .

. . . .

Perhaps not perfect, but now we have a better standard to determine whether *Hollandsworth* or *Singletary* applies in relocation cases. In such cases, *Cooper* requires the trial court not to look only to the custody label in the decree or to strict mathematical precision, but the court must determine whether one parent spends significantly more time with the child than the other parent. How do we determine that "significantly more time" standard? We are left with the imprecise exercise of comparing and analogizing *Cooper*. In *Cooper*, the strict mathematical precision set forth in the decree was that the appellant spent 42.9 percent with the child and the appellee spent 57.1 percent with the child. Further, the supreme court in *Cooper* stated that "[h]ere, both parties shared the responsibility for making decisions on [the child's] behalf, and each parent has a significant and meaningful relationship with the child." *Cooper*, 2017 Ark. 331, at 16, 532 S.W.3d at 68. In light of these factors, the supreme court in *Cooper* disagreed with the trial court and held that the parties did enjoy a joint-custody relationship and that the appellee was not entitled to the *Hollandsworth* presumption.

2022 Ark. App. 442, at 12–13, 654 S.W.3d 367, 374–75. Here, the parties' approximately 60/40 split compares favorably with the facts in *Cooper* and the verbiage of Arkansas Code Annotated section 9-13-101(a)(5) (Supp. 2023), wherein joint custody is defined as "approximate and reasonable equal division of time with the child." Moreover, the record reflects that Jerred has a meaningful relationship with MC, shares co-parenting responsibilities, and is significantly involved in MC's life. Accordingly, we hold that the

circuit court properly applied *Singletary* and *Cooper* in denying Malissa's petition to relocate; thus, no analysis under *Hollandsworth* is necessary.

## B. Material Change in Circumstances

Next, Malissa contends that the circuit court erred in concluding there was a material change in circumstances to justify a custody modification. Specifically, Malissa maintains that because precedent clearly states that relocation of a parent does not constitute a material change in circumstances, the court improperly modified custody. Because the circuit court did not base its decision solely on Malissa's relocation, we find this argument unpersuasive. The circuit court outlined the material change in circumstances as follows: (1) MC's school-attendance issues; (2) Malissa's acts of parental alienation against Jerred; and (3) lack of communication between Malissa and Jerred.

Modification of custody is a two-step process: first, the circuit court must determine whether a material change in circumstances has occurred since the last custody order; second, if the court finds that there has been a material change in circumstances, the court must determine whether a change of custody is in the child's best interest. *See Shell v. Twitty*, 2020 Ark. App. 459, 608 S.W.3d 926. The burden of proving a change in circumstances is on the party seeking modification. *Alsina v. Hicks*, 2023 Ark. App. 485, 678 S.W.3d 449. Custody should not be changed unless either conditions have altered since the decree was rendered or material facts existed at the time of the decree but were unknown to the court, and then only for the welfare of the child. *Id.*

Failure of communication, increasing parental alienation by a custodial parent, and inability to cooperate can all constitute a material change in circumstances sufficient to warrant modification of custody *See Self v. Dittmer*, 2021 Ark. App. 85, 619 S.W.3d 43; *Montez v. Montez*, 2017 Ark. App. 220, 518 S.W.3d 751. Further, our appellate courts have held that the combined, cumulative effect of particular facts may together constitute a material change. *Shannon v. McJunkins*, 2010 Ark. App. 440, 376 S.W.3d 489; *see also McCoy v. Kincade*, 2015 Ark. 389, 473 S.W.3d 8. Here, there was evidence that MC's absences and tardies at school—while with Malissa—warranted the school's sending a letter and Malissa's meeting with a truancy officer. There was also evidence and testimony that Malissa failed to inform Jerred of MC's medical and educational issues, in violation of the agreed custody order, and that she told MC's teacher not to provide Jerred with information regarding MC because he did not have custody. Malissa also told MC's teacher that Jerred was "sneaky" and "didn't follow any rules." On cross-examination, Malissa admitted that she wanted to substantially change and reduce the amount of time Jerred spends with MC.

Finally, Malissa's argument that the record does not support the circuit court's finding of unexcused absences and/or tardies or that she attempted to alienate MC from Jerred simply amounts to a request for this court to reweigh the evidence. The same applies to the assertion that any communication problems between the parties are the result of Jerred's actions, not hers. Malissa is asking this court to reweigh the evidence in her favor, but credibility determinations are left to the circuit court, and this court does not reweigh the evidence. *See Faulkner v. McCain*, 2020 Ark. App. 541, 613 S.W.3d 746. Reaching a different

conclusion herein would encroach upon the superior position of the circuit court with regard to evaluating witness testimony and credibility. The circuit court made factual findings in support of a determination that Malissa's actions constituted a material change in circumstances.

Accordingly, given the facts herein and well-established precedent that the circuit court is presumed to be a better judge of credibility and factual findings than appellate courts, we find that sufficient evidence supports the circuit court's finding that material changes in circumstances existed.

C. Best Interest

On appeal, Malissa does not argue that the circuit court's best-interest finding was clearly erroneous. Rather, she maintains that the court erred in granting joint custody because of the parties' inability to communicate. In its written order, the circuit court held that joint custody was in MC's best interest given the change in circumstances discussed above. Furthermore, at the hearing, the court elaborated that it was the attorney ad litem's recommendation that the parties share joint custody, and the court agreed it was in MC's best interest to spend equal time with both Malissa and Jerred.

With regard to Malissa's assertion that the circuit court erred in awarding joint custody because she and Jerred "cannot get along" or cooperate for the best interest of MC, the record reflects they were able to cooperate for several years before Malissa filed the petition to relocate. As reflected in the initial custody order, Malissa's work schedule fluctuates, and the parties were able to cooperate and modify visitation days when Malissa's

15

work schedule changed in 2021. In *Hoover v. Hoover*, this court affirmed a circuit court's award of joint shared physical custody and held, "Although the record demonstrates that there is a significant level of animosity between these parties, the record also shows that both parties are capable parents who love their children and are equally involved with their activities." 2016 Ark. App. 322 at 8, 498 S.W.3d 297, 301. We note that the level and duration of friction between the parties in *Hoover* far exceeded that which is present in this case.

Given our standard of review and the special deference we give circuit courts to evaluate the witnesses, their testimony, and the child's best interest, we cannot say that the circuit court clearly erred.

### D. Attorney's Fees

Malissa argues that the circuit court erred in awarding Jerred his attorney's fees. However, she sets forth no reasoning or citation to authority to justify reversal of the circuit court's award of attorney's fees. She simply states that upon reversal of the order on appeal, Jerred will no longer be the prevailing party; therefore, the award of attorney's fees should be reversed as well. Because we hold that Malissa does not prevail on any of her preceding arguments on appeal, we also affirm the award of attorney's fees.

### V. *Conclusion*

For the reasons set forth above, we affirm the circuit court's amended order regarding custody and request for relocation as well as the order awarding attorney's fees.

Affirmed.

16

VIRDEN and MURPHY, JJ., agree.

*Robert S. Tschiemer*, for appellant.

*The Ballard Firm, P.A.*, by: *Andrew D. Ballard*, for appellee.