Cite as 2026 Ark. App. 202

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CV-25-438

| | |
|---|---|
| NICOLE WAUCHOPE <br> APPELLANT <br><br> V. <br><br> KHRISTOPHER MOORE <br> APPELLEE | **Opinion Delivered** April 1, 2026 <br><br> APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT [NO. 72DR-16-733] <br><br> HONORABLE JOHN C. THREET, JUDGE <br><br> AFFIRMED |

## BRANDON J. HARRISON, Judge

Nicole Wauchope appeals the circuit court order that found no material change in circumstances sufficient to modify custody and ruled that Khristopher Moore would retain primary physical and legal custody of the parties' child, MC. She argues that the circuit court erred in not finding a material change in circumstances and in not finding that it was in MC's best interest for Wauchope to have primary custody. We affirm the circuit court's order.

The parties married in October 2010 and have one child born in November 2011. However, the parties separated in July 2015, and in May 2016, Moore filed for divorce. The divorce complaint stated that MC lived with Moore and that "the parties realize that it would be in the child's best interest to remain with [Moore]." The parties entered into a child-custody, support, and property settlement agreement in which the parties agreed that

Moore would be granted custody of MC, and Wauchope, a full-time student, would pay $127 a month in child support. The court granted the divorce decree, which incorporated the settlement agreement, on 8 June 2016.

On 26 March 2024, Wauchope petitioned for a modification of custody. She alleged that there had been a substantial and material change in circumstances warranting a modification of custody, including (1) MC is now twelve years old and wishes to live with her and her husband in Pittsburgh, Pennsylvania; (2) Moore has failed to keep her apprised of issues with MC's health and welfare and with his schooling; and (3) Moore is now an over-the-road truck driver and is gone for several days at a time, and his spouse works nights.

Wauchope declared that it is in MC's best interest to live with her and her spouse because they own their own home, her parents live nearby, they live in one of the best school districts in the state, and they have adequate financial resources to take care of MC. She also asserted that she works from home full time and "would be able to fully devote herself to the care and support" of MC.

Moore responded by filing a motion to dismiss, citing paragraph 21 of the parties' settlement agreement, which states that if either party wishes to petition the court to modify custody, they shall first submit to mediation. Moore asserted that Wauchope had petitioned for custody modification without first requesting mediation in violation of the parties' agreement and the court's order and that the only appropriate remedy was a contempt citation or dismissal of the petition for modification.

Wauchope admitted that she had filed the modification petition before submitting to mediation but explained that "she made substantive efforts to resolve this matter with

[Moore] and was rebuffed." She also asserted that the issues raised in her petition involved "health and safety concerns for [MC]'s well-being and should be heard and addressed as soon as possible." Wauchope denied the petition should be dismissed and expressed willingness to submit to mediation if ordered by the court.

The court appointed an attorney ad litem to represent MC and, after a temporary hearing on May 31, entered an agreed order directing the parties to attend mediation before the final hearing on custody modification. The mediator's report filed on 21 August 2024 indicated that an agreement had not been reached.

The circuit court convened a hearing on 23 January 2025. Wauchope testified that she lives in Pittsburgh, Pennsylvania. When she and Moore were married, they lived in Colorado, but when they divorced, she moved to Utah to continue her education, and Moore moved home to Arkansas. She had been remarried for about a year and a half and had lived in Pittsburgh since 2016. She works for PNC Bank in a full-time work-from-home position. She explained that under the terms of the divorce decree, she has MC with her for Christmas break, two months over the summer, and every other spring break, and she has exercised most of the visitation granted by the decree. She expressed concern dating back several years about MC's well-being, education, and lack of supervision in his dad's custody. Before switching schools in the fall of 2024, MC had attended school in Siloam Springs and rode the bus one hour each way, and he had twenty-nine absences in the 2023–2024 school year. His grades were also a little below average, but Moore had told her MC was doing really well in school. She attempted to get information from MC's school, but Moore had her placed on a "do-not-call" list. Via text message, Moore also called her a

3

"motherfucker" and said, "You don't ever call his damn school." This is just one example of hostile communication from Moore. MC began attending school online in August 2024, and Wauchope expressed concern over his failing or barely passing grades. Moore also failed to share information about MC's health, from routine checkups to several emergency-room visits.

Wauchope also testified that when this custody case was reopened, she discovered that Moore's wife, Kayla, was a stripper. Wauchope expressed concern because Kayla had multiple public accounts on TikTok and Instagram, and Wauchope did not want the videos or images shown to MC. Wauchope also discovered that Moore's half brother had been living with them for approximately two years.

Wauchope also described several instances of noncooperation from Moore in arranging MC's travel and at least one instance in which Moore had lied about beating up his mother in front of MC just to upset Wauchope. Moore had also threatened to withhold visitation multiple times. Wauchope also complained that when MC came to stay with her, his clothes were often dirty or too small, and she was concerned that he did not have regular hygiene habits like showering and brushing his teeth.

Wauchope described her community in Pittsburgh, Mt. Lebanon, as a very tight-knit community. She and her husband live in one of the best school districts in the state, and they have a three-bedroom, two-bath house in which MC has his own room. He also has friends that live on the same street. In addition, she and her husband both have family close by, and they spend a lot of time with MC.

Wauchope opined that MC's "quality of care and life would increase significantly" if he lived with her. MC would attend Mellon Middle School, which is within walking distance of their house, and the school has the resources to help him raise his grades. She and her husband are also available to help with homework and supervise screen time. MC would also have the opportunity for more social activities as well, including sports and clubs at school.

Moore testified that he currently works at Superman Drilling, Monday through Friday, and that he is sometimes required to be away from home overnight. His household includes his wife, Kayla, her eleven-year-old son, and his brother. He agreed that at the time Wauchope petitioned for custody, Kayla was working as a stripper on the weekends. He was aware of Kayla's Instagram account but was not concerned that MC might see it because he had access to only YouTube, texting, and phone calls on his phone. Kayla now has a different job and works from home Monday through Friday, 5:00 a.m. to 1:00 p.m. She also supervises her son's and MC's online schooling, and she is pregnant. Kayla's son and MC have a close relationship. He admitted that Kayla smoked marijuana and used edibles when she had a medical marijuana card, but the card had expired. Moore also admitted that he had threatened to "beat [MC]'s ass" on multiple occasions when disciplining him.

According to Moore, Wauchope had always had access to MC's school, but she "never chose to use it properly." She had also never asked to be added as a parent at MC's school. He admitted that he had not always informed Wauchope of MC's doctor visits or

emergency-room visits. He also confirmed that there were times that MC did not have health insurance.

Moore stated that he did not believe he had an obligation to discuss things like MC's schooling with Wauchope because she is not the primary custodian. But he also said that he had "neglected" his responsibility to keep Wauchope informed and that he "need[ed] to do better." He explained that MC's grades had suffered as he adjusted to online school but that he was now improving.

Kayla testified that she supervised MC's schooling and that she had contacted the online school on two occasions with concerns about Wauchope. On 10 October 2024, she conveyed to the school that she and Moore were "worried that Nicole could be using her position with her ARVA account for malicious intents" against Moore in an ongoing court battle. She asked if it was possible "to have the data of how much time Nicole Wauchope is actively trying to help [MC] vs only looking at his grades online."

Kayla also contacted the school on 20 November 2024 and expressed concern on Moore's behalf that MC's teachers were sharing confidential information with Wauchope that is not directly related to MC's schooling. The email read, "Nicole is the biological parent of [MC] however she does not have any parental custodial rights at this time. Meaning all decisions regarding [MC]'s well being are at the discretion of Khristopher until the courts decide otherwise."

Kayla conceded that Moore had room to improve on his communication with Wauchope regarding school, medical issues, and other issues.

Adam Paar, Wauchope's husband, testified that they had been together since 2015 and married for the past year and a half. When MC is with them, they do activities such as playing board games, ice skating, and watching sports. MC had a strong community of support with both his family and Wauchope's family in the area. Paar said that he and MC have a "good, strong relationship" and that he tries to be a strong role model for him.

Kayla was recalled to the stand and testified that she and Moore were expecting a little girl and that MC was excited about the baby. She also said that MC and her son are very close. MC also has a lot of friends and spends time with Moore's family who live in the area. She said it would be "devastating" if MC no longer lived with them.

Moore was recalled and said that his relationship with MC is "of the utmost importance." He explained, "For the last eight years, I've done everything I can to be the best dad I can for him. I've tried to raise him right with Southern morals and the way to conduct himself as a gentleman and a young man. . . . And I feel like I've done a great job as a parent." He also said that if MC went to live in Pennsylvania, it would "destroy my family and the dynamic that I'm building and have been building for eight years. He's been my primary concern all this time, and Nicole has never fought for him until now." He denied Wauchope had made previous requests for MC to live with her.

Katelyn Sholk, the attorney ad litem, informed the court that MC's stated preference was to stay in Arkansas and spend any long breaks in Pittsburgh. But Sholk had concerns with that scenario because it was "abundantly clear" that Moore views his role as custodial parent as "absolute." Moore does not consult Wauchope on important decisions, nor does he believe that he is required to do so. She described Moore's communications as

7

"vindictive," "hateful," and "uncooperative." Sholk was also concerned that Moore was gone during the week for work, leaving Kayla in charge of both boys and a baby on the way. In addition, MC's grades had declined since he moved from public school to virtual school. Sholk also stated that MC has excessive screen time including on his phone, his computer, and the Xbox.

Sholk recommended that Wauchope be granted custody of MC; that Moore be given long-distance visitation and ordered to pay child support; and that both parents should be given full access to all school and medical records and be free to communicate with the school and doctor's offices. She also recommended that MC be enrolled in counseling in Pittsburgh and that both parents cooperate and follow any recommendations from the counselor. In addition, both parents should be civil in their communication, and Moore should complete a minimum of twelve hours of parenting classes.

From the bench, the court stated that Moore "clearly" had an issue with his temper, but that did not necessarily create a material change in circumstances. Regarding MC's education, the court noted, "The virtual school has been a semester, we're at a semester. Could he do better if we call that a material change in circumstances, ship him up to Pittsburgh and hope that the school will do better, would he do better up [sic] in school there? I don't think that's a material change in circumstances." The court found that Moore's behavior of not keeping Wauchope informed was contemptuous behavior but not a material change in circumstances. Likewise with Moore's failure to keep Wauchope apprised of any medical issues. In sum, the court found that much of the testimony had been about how MC's life would be better in Pittsburgh, but "that doesn't mean that it

8

equals up to a material change in circumstances where you lift the kid from one life that he has known his entire life and say, we're going to try it up in Pittsburgh because we think it's going to be better in Pittsburgh." Accordingly, the court found no material change in circumstances and denied the motion for modification. Wauchope timely appealed.

We perform a de novo review of child-custody matters, but we will not reverse the circuit court's findings unless they are clearly erroneous. *Hamerlinck v. Hamerlinck*, 2022 Ark. App. 89, 641 S.W.3d 659. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been made. *Id.* Deference to the circuit court is even greater in cases involving child custody, as a heavier burden is placed on the circuit court to utilize to the fullest extent its powers of perception in evaluating the witnesses, their testimony, and the best interest of the children. *Fudge v. Dorman*, 2017 Ark. App. 181, 516 S.W.3d 306.

For custody-modification cases, courts impose more stringent standards than they do for initial determinations of custody in order to promote stability and continuity in the life of the child and to discourage the repeated litigation of the same issues. *Geren Williams v. Geren*, 2015 Ark. App. 197, 458 S.W.3d 759. Modification of custody is a two-step process: first, the circuit court must determine whether a material change in circumstances has occurred since the last custody order; and second, if the court finds that there has been a material change in circumstances, the court must determine whether a change of custody is in the child's best interest. *Wallis v. Holsing*, 2023 Ark. App. 137, 661 S.W.3d 284. A child-custody determination is fact specific, and each case ultimately must rest on its own

facts. *Graf v. Graf*, 2024 Ark. App. 212, 686 S.W.3d 912. We will not substitute our judgment for that of the circuit court, which observed the witnesses firsthand. *Id.*

The party seeking to modify the custody order has the burden of showing a material change in circumstances. *Geren Williams, supra.* Determining whether there has been a change of circumstances requires full consideration of the circumstances that existed when the last custody order was entered in comparison to the circumstances at the time the change of custody is considered. *Id.* To establish a material change, it is essential to demonstrate that the changed circumstances are substantial and directly affect the child's welfare. *Fry v. Laire*, 2025 Ark. App. 470, 721 S.W.3d 836. Failure to communicate, increasing parental alienation by a custodial parent, and inability to cooperate can all constitute a material change in circumstances sufficient to warrant modification of custody. *Montez v. Montez*, 2017 Ark. App. 220, 518 S.W.3d 751. Further, we have held that the combined, cumulative effect of particular facts may together constitute a material change. *Shannon v. McJunkins*, 2010 Ark. App. 440, 376 S.W.3d 489.

Wauchope argues that the circuit court clearly erred in not finding that the following constitute a material change in circumstances: (1) Moore's failure to keep her informed about MC's educational and medical information; (2) MC's decline in school performance and excessive absences; and (3) Moore's hostile communications, failure to promote a relationship between MC and Wauchope, and a general lack of supervision. In support, she cites cases such as *Davis v. Vondran*, 2025 Ark. App. 142, in which the circuit court found a material change in circumstances justifying a modification in custody; those circumstances included the child's absences and tardies at school while in Davis's custody, Davis's failure

10

to keep Vondran informed of the child's medical and educational issues, and Davis telling the child's teacher not to provide Vondran with any information regarding the child. Davis also admitted that she wanted to reduce the amount of time that the child spent with his father. On appeal, this court affirmed, explaining that this court does not reweigh the evidence and would not "encroach upon the superior position of the circuit court with regard to evaluating witness testimony and credibility." *Id*. at 15.

Wauchope also cites *Davis v. Sheriff*, 2009 Ark. App. 347, 308 S.W.3d 169. In *Sheriff*, the circuit court found a change of circumstances existed and granted appellee's motion for change of custody and relocation to Texas. While the order itself did not identify the factual basis supporting the change-of-circumstances finding, the circuit court discussed its concern about three issues before declaring a material change existed: (1) MC's attendance in kindergarten and first grade; (2) MC's grades in first grade; and (3) a failure to make Sheriff aware of the educational problems his children were experiencing. This court held,

> Excessive absences, tardiness, and the lack of academic progress are matters that may be weighed by the trial court in determining the best interest of the child. However, given the evidence in this case, we agree with appellant that none of the concerns specifically listed by the trial court in its comments from the bench, either alone or in combination, constituted a material change sufficient to warrant a modification of custody.

2009 Ark. App. 347, at 7, 308 S.W.3d 169, 172–73. Nevertheless, this court affirmed the circuit court's ruling on the basis of MC's stepfather's conviction of child endangerment against his biological son.

Here, the circuit court considered all of Wauchope's allegations that she claimed supported a material change in circumstances, and she, in essence, argues that this court should reweigh the evidence in a manner that is more favorable to her. But we, as the

reviewing court, cannot reweigh the evidence to favor Wauchope's position. *See Vondran*, *supra* (credibility determinations are left to the circuit court, and this court does not reweigh the evidence). The circuit court found that there was no evidence of a material change justifying a disruption to the stability and continuity of MC's life. Given our standard of review and the special deference we give circuit courts in child-custody cases, we hold that the circuit court did not clearly err in finding that no material change in circumstances had occurred.

As noted above, in order to modify a custody decree, the circuit court must apply a two-step process: first, the court must determine whether a material change in circumstances has occurred since the divorce decree was entered; second, if the court finds that there has been a material change in circumstances, the court must determine whether a change of custody is in the child's best interest. *Shell v. Twitty*, 2020 Ark. App. 459, 608 S.W.3d 926. Here, because the court found there had not been a material change in circumstances, there was no need to reach the best-interest analysis. Likewise, this court need not address the issue of best interest.

Affirmed.

TUCKER and WOOD, JJ., agree.

*Kristen Komander Law*, by: *Kristen Komander*, for appellant.

*Taylor Law Partners, LLP*, by: *Ryan Jewell* and *Nick Mote*, for appellee.